310 So.2d 557 (1975)
STATE of Louisiana
v.
Johnny G. MASSEY and Morris Dwyer.
No. 55185.
Supreme Court of Louisiana.
March 31, 1975.
*558 Murphy W. Bell, Director, Vincent Wilkins, Jr., Trial Atty., Robert R. Rainer, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Richard E. Chaffin, Asst. Dist. Atty., for plaintiff-respondent.
BARHAM, Justice.
The relators were charged by bill of information with possession of marijuana with intent to distribute, a violation of La. R.S. 40:966, subd. A. Subsequent to the filing of the bill of information relators filed a pre-trial motion in which they *559 sought to have suppressed marijuana and related materials seized from the trunk of relator Massey's car on the evening of their arrests. The most significant ground upon which the motion is based alleges that the tangible evidence sought to be introduced against relators was seized as a result of an unconstitutional search. After a hearing on the motion to suppress, the trial court denied the motion. We granted writs to review the trial court's ruling on the motion. State v. Massey, 300 So.2d 844 (La.1974).
The record reveals that on the night of the relators' arrests and the search and seizure at issue, a surveillance took place outside relator Dwyer's apartment. A police informant was sent inside relator's apartment to purchase marijuana; shortly after he exited one of the officers noted the relators leaving the apartment carrying a duffel bag and a cooler and walking toward the parking area of the apartment complex. The police officer who observed this movement lost sight of relators in the parking lot but testified that he subsequently heard a car with a loud muffler move. While these occurrences were taking place, some officers were at the home of a district judge securing a warrant for the search of the Dwyer apartment; the record reflects that while these officers were in the process of securing the warrant, they continuously received radio communications regarding the events transpiring at the surveillance site. In due time, the surveillance officers received radio notification that the warrant had been issued and, acting pursuant to the informant's information that the relators were armed, they kicked down the door to Dwyer's apartment and arrested the relators. Car keys which were found on the coffee table of the apartment were seized and used to effect a search of the trunk and interior of a car which was parked in a lot adjoining the apartment complex wherein relator Dwyer's apartment was located and which belonged to relator Massey.
The record reveals that Massey's car was located behind the apartment and approximately twenty yards across a parking lot. The distance between the apartment door and Massey's car was estimated by various witnesses to be between seventy-five and one hundred and twenty-five feet. The record also establishes that pursuant to the informant's description of "all of the vehicles that Mr. Massey and Mr. Dwyer were supposed to be driving", two other vehicles in the parking lot were searched in addition to Massey's car, the one in which the evidence was found. The record indicates that at the time of the search in question, approximately thirty to forty cars were on the parking lot. The marijuana found in Massey's automobile forms the basis for the instant prosecution.
Relators challenge the existence of probable cause sufficient to warrant the search of the Massey vehicle; alternatively, they argue that even if the existence of probable cause is conceded, the warrantless search of the automobile must fall for failure to come within any enunciated exception to the warrant requirement. At the outset, we determine that the warrant authorizing the search of Dwyer's apartment can in no way validate the warrantless search of Massey's automobile. The search of the car must come within a recognized exception to the warrant requirement in order to comport with constitutional guarantees against unreasonable searches and seizures.
The only exception to the warrant requirement arguably applicable to the facts of this case is the automobile exception. This well-delineated exception is painstakingly explained in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1974) and properly applied in State v. Hargiss, 288 So.2d 633 (La.1974). For a warrantless search of an automobile to be constitutionally valid, there must exist probable cause to search the vehicle and exigent circumstances which render impracticable *560 the application for a warrant. In Coolidge, supra, the United States Supreme Court quoted language from Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), noting as follows:
"* * * `exigent circumstances' justify the warrantless search of `an automobile stopped on the highway,' where there is probable cause, because the car is `movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' `[T]he opportunity to search is fleeting ....' (Emphasis supplied.... [by the United States Supreme Court])."
In the instant case, the opportunity to search was hardly "fleeting". The relators had been placed under arrest, the automobile was locked, and the keys were in the custody of the police. The record reveals that there were no less than ten officers on the scene at the time Massey's vehicle was searched. The State argues that the search is covered by the automobile exception to the warrant requirement. Even though its argument implicitly acknowledges the need for "exigent circumstances" as well as probable cause in order to meet the tests for the automobile exception, the State's brief contends that the arrival of two unknown persons at Dwyer's apartment during the search and the officers' lack of knowledge as to whether others had keys to Massey's car constituted the requisite "exigent circumstances" necessary to validate the warrantless search and seizure.
We acknowledge that under the facts within the officers' possession at the time of the search of Massey's car, probable cause to believe that the car contained contraband did exist. However, the existence of articulated probable cause is the standard which determines the correctness of a search pursuant to a search warrant, not the propriety of a warrantless search. The mere existence of probable cause will not even validate a search pursuant to a warrant unless the facts and circumstances which comprise the probable cause are contained in a written affidavit and presented to the neutral magistrate to whom the warrant application is made. For a warrantless search to be valid, more than probable cause must exist. In addition, some other circumstances must be present which will render applicable some exception to the warrant requirement. In the case of an automobile search such as the one with which we are presently concerned, the additional elements necessary to validate a warrantless, probable cause search are "exigent circumstances".
In spite of the State's attempt to manufacture "exigent circumstances" at the time of the hearing by questioning an officer regarding the arrival of the two unknown persons and his lack of knowledge of whether other keys to the Massey car were possessed by other persons, the record does not reveal that these circumstances occurred to the officers at the time of the automobile search nor does it appear from the officers' testimony that these circumstances motivated their warrantless search of the car. We do not find that these facts developed by the State at the hearing on the motion to suppress justify a search without a warrant.
For the reasons assigned, the trial court's ruling on relators' motion to suppress is reversed and the motion is granted. The case is remanded for proceedings consistent with the views herein expressed.
SANDERS, C. J., dissents for the reasons assigned by SUMMERS, J.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
The majority opinion admits the presence of probable cause. In my view, under *561 the facts of the case, there were also exigent circumstances. Hence, the "automobile exception" to the warrant requirement of the fourth amendment was present here. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The search and seizure was lawful. Accordingly, I consider the trial judge correctly denied defendant's motion to suppress. I dissent from the majority's reversal of this ruling.
SUMMERS, Justice (dissenting).
Johnny Massey and Morris Dwyer were charged in that on December 20, 1973 they knowingly and intentionally possessed marijuana, a controlled dangerous substance, with intent to distribute contrary to La. 40:966(A). Prior to trial they filed a motion to suppress the marijuana and paraphernalia, alleging it was obtained as a result of an unlawful search and seizure. After a hearing on the motion it was denied. Massey and Dwyer then applied to this Court for writs to review the ruling of the trial judge. We granted writs.
The sole issue presented is whether material alleged by the State to be marijuana obtained during a search of the trunk of an automobile owned by the defendant, Massey, may be used as evidence at the trial.
On December 20, 1973, Lieutenant Allen H. West, a deputy sheriff of East Baton Rouge Parish, applied under oath to the District Judge at his residence in the early evening for a search warrant. He deposed that probable cause existed for the issuance of a search warrant authorizing the search of an apartment occupied by Morris Dwyer located at 8235 Greenwell Springs Road, Apartment 22, where a quantity of marijuana was believed to be secreted. In the affidavit West informed the court that on that date a confidential informant working under his direct supervision was searched and given a quantity of money, followed to the apartment and observed entering the front door. The affidavit further set forth that the confidential informant was observed leaving the apartment a short time later, under observation until he turned the marijuana over to Sergeant S. A. Weber. Further, Sergeant M. R. Barnett had received information in the past six months that Dwyer was dealing in large quantities of marijuana and frequently made trips to Texas to obtain quantities of the drug. This information was given to Sergeant Barnett, according to the affidavit, by a reliable and confidential informant who had given information previously leading to the arrest and conviction of at least four persons.
In the meantime, while Officer West was waiting at the judge's residence to sign the affidavit, Sergeant Michael R. Barnett and Walter Nick Ross established a surveillance of Dwyer's apartment. Barnett was in the rear of the apartment, and Ross was situated in a vacant apartment overlooking the front. All of these officers were equipped with two-way radios attuned to the same frequency.
From his vantage point Ross observed the confidential informant enter the apartment and emerge in several minutes with a bundle and join Barnett at his place of concealment. The informant then advised Barnett that Dwyer and Massey were inside the apartment and that they were armed. He also told Barnett that Dwyer and Massey were going to move the marijuana from the apartment. Barnett communicated this information to West by radio. Shortly thereafter the defendants Dwyer and Massey came out of the apartment carrying a duffel bag and an ice chest. Ross observed them as they went around the building to a parking lot out of his view. He heard a car start up in that area and heard a car door slam. Dwyer and Massey then re-entered the apartment. Ross then notified Barnett by radio that the informant had made the buy and defendants were removing something from the apartment. The broadcast was intercepted by West.
*562 Seven or eight minutes later the officers at the surveillance site received word from West by radio that the search warrant had been signed by the judge, who, apparently, heard the radio transmissions and then had West swear to the information before he signed the warrant.
Officer Barnett and a contingent of peace officers then forced the door to the apartment where they found Dwyer and Massey seated in the living room with two hand guns on the table between them. A set of automobile keys were found on a coffee table nearby. Dwyer and Massey were arrested, searched and handcuffed. While these events were transpiring a man and woman appeared at the scene who were not there at the time of entry.
Barnett then went out to the parking lot, having been informed that Dwyer's car was a blue Chevelle. With the keys obtained from the apartment he opened the door on the driver's side and searched the inside of the car, finding nothing. He then opened the trunk of the car where he found the ice chest and duffel bag Dwyer and Massey had removed from the apartment. In these containers were eleven plastic bags (each containing a pound of marijuana), four pipes, five small plastic bags (each containing about an ounce of marijuana), and a large green garbage can liner containing eight to twelve pounds of loose marijuana.
Three contentions are made to support the defense position that the search and seizure was invalid and in derogation of constitutional guarantees of the Fourth Amendment to the United States Constitution.
As to the contention that the search of the automobile was without probable cause, the facts recited gave ample cause for the officers to believe that the marijuana which was certainly in the apartment for which the search warrant was obtained was moved to the nearby Chevelle in the parking lot of the apartment complex. Without reciting the facts again, I think this much is clear.
Notwithstanding, defendants contend that even where probable cause exists, an automobile cannot be subjected to a warrantless search unless exigent circumstances accompany the police determination of probable cause.
In our last term we had occasion to consider the holdings in Chambers v. Maroney, 309 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), involving automobile searches. Our understanding of these cases was then expressed as follows:
"These cases clearly indicate that a warrantless search of a vehicle may be valid when there exists a probable cause for a search and the circumstances dictate that the search should be made immediately. Further, in construing the above language (referring to Chambers v. Maroney), it is apparent that in all cases it is not necessary that the probable cause which gives rise to the search arise coincidentally with the occurrence of the exigent or unforeseeable circumstance." (parentheses added). State v. Tant, 287 So.2d 458 (La.1974).
In United States v. Taylor, 428 F.2d 515 (8th Cir. 1970), the Court stated the general rule to be that officers must obtain search warrants except in a few specifically established and well-defined cases. One exception the Court recognized "is that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants `where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543...."
Reasonableness is the test in these cases under the Fourth Amendment, and I believe the facts of this case satisfy that test. While the search of the apartment was in progress, two unknown persons, a man and woman came upon the scene. They were *563 detained. But the officers did not know who else might have a set of keys to the vehicle and could move it. Search and seizure of the automobile was moreover warranted under these circumstances where a search warrant had been obtained to search the apartment, and the marijuana was moved from the apartment under the observation of the police only minutes before the warrant could be executed. Removal of the marijuana from the apartment where the search was authorized was so connected in point of time and place that it was all part of the transaction authorized by the search warrant.
It is finally contended that the officers forced their way into the apartment without announcing their authority and purpose. "In order to execute a search warrant a peace officer may use such means and force as are authorized for arrest by Title V." La.Code Crim.Proc. art. 164. Under Title V, Article 224, "The peace officer need not announce his authority and purpose when to do so would imperil the arrest."
As the narration of the facts makes clear, the defendants were armed, and the police had been informed of this fact by the confidential informant who had just emerged from the apartment. Under these circumstances the police are not required to announce their purpose when two men within the room to which entry was sought were known criminals who they knew to be armed.
Testimony at the hearing makes it clear that the entry into the apartment was after the police had been informed that the judge had signed the search warrant. Officer West came directly to the apartment thereafter with the warrant, arriving within ten minutes. At that time he promptly served the warrant upon the defendants. These facts made it unnecessary for the search party to have the warrant in their possession at the time of the entry.
The ruling of the trial judge should be affirmed.