344 So.2d 1026 (1977)
STATE of Louisiana
v.
George MITCHELL and Bernard Bilbo.
No. 58838.
Supreme Court of Louisiana.
April 11, 1977.
*1027 Robert F. Fleming, Jr., Anthony L. Glorioso, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendants George Mitchell and Bernard Bilbo were convicted and sentenced for the theft of $1292.29 from a New Orleans bank, and appeal. The theft was accomplished by opening an account in the name of the Louisiana High Blood Pressure Association with a small amount of money, depositing worthless checks and cashing checks before the worthless nature of the checks deposited was discovered.
Assignment of Error No. 1 was taken to the denial of part of a motion to suppress an envelope, six one hundred dollar bills and five ones taken from the front seat of Bilbo's locked automobile parked on a bank parking lot. Assignments 4, 9 and 12 are related.
Detective Dunn and another detective were called to the ICB bank in downtown New Orleans and interviewed two young men who were attempting to cash two checks. Information from the two men and the history of the activity of the account, *1028 supplied by the bank employees, disclosed facts typical of a fraudulent scheme. While the detectives were at the bank, they learned that Bilbo was at that very time attempting to cash another check at the Prytania Street branch of the bank. Two checks of the same type had already been cashed by someone using the name Bernard Bilbo. On instructions from the detective, Bilbo was detained at the Prytania Street branch until police officers, ordered by the detectives, could affect an arrest.
When police arrived at the Prytania Street branch, Bilbo was in custody of a bank guard, who had required Bilbo to empty his pockets. The police took Bilbo and his personal effects to the police car. Bilbo was placed in the back. One policeman sat in front. Bilbo was informed of his rights. Bilbo described his automobile to the officer, who had found his car keys among the effects turned over to him. The other officer then returned to the police car with the information that Detective Dunn wanted Bilbo's car impounded. The car was located on the bank lot near the drive-in windows, locked. Before the police opened the door they saw an envelope on the front seat with one corner tucked into the upholstery and a "stack of cash sticking out." The police then unlocked the car and removed the envelope with the money. After the arrival of the police tow truck, the car was hauled away.
Defendant argues that the seizure of the money did not fall within any of the exceptions to the constitutional prohibitions against warrantless searches. The argument lacks merit.
We need not speculate whether the police intended to obtain a warrant after the car was appropriately impounded, or whether the officers approached the car intending to make a warrantless search. (As a matter of interest, the trial judge sustained the motion to suppress items taken by the police from the closed glove compartment).
Probable cause existed. At the time the money had been seized, the police had convincing proof that the bank had been bilked and that Bilbo was a principal in the theft. Even if the police had resolved to search the car without a warrant, it was not to determine whether a crime had been committed, but to find the money.
The police were faced with exigent circumstances. Even a locked automobile is not a safe place for large bills exposed to view on the front seat in the city, either on the bank parking lot or in the city vehicle pound. Currency has a peculiar property: it tends to disappear. Whatever the intention of the police before they saw the money, when they saw it exposed on the seat they had both probable cause and exigent circumstances, and were then entitled to open the door and take the money into their possession.
Defendant relies on State v. Massey, 310 So.2d 557 (La.1975) and State v. Navarro, 312 So.2d 848 (La.1975), cases in which evidence seized in warrantless searches of automobiles was suppressed. The cases are distinguishable. In the Massey case there was a search of an apartment under authority of a warrant. Car keys were found by police on a coffee table in the apartment. The police took the keys and searched the trunk of defendant's car, parked on a lot behind the apartment building. The search was invalidated because there were no exigent circumstances which justified the lack of a warrant to search the car.
In the Navarro case both occupants of an automobile stopped for a minor traffic offense had been removed from the car and arrested. There was no danger of destruction or removal of evidence, since the police were charged with the safekeeping of the automobile. Therefore there were no exigent circumstances.
There is no merit in Assignments 1, 4, 9 and 12.
Assignments of Error Nos. 7, 13, 15, 16 and 17
The State sought to introduce into evidence exhibits S-2 through S-6, which were checks payable to two employees of Louisiana High Blood Pressure, Inc. and the defendant Bernard Bilbo. The checks were *1029 drawn on the Louisiana High Blood Pressure account at ICB and were all dated July 17, 1975. None of these checks were ever cashed at ICB because on July 17, 1975 the two young men were detained by ICB officials at the downtown branch when each attempted to negotiate one of these checks. Investigation by bank officials and the police led to the arrest of the defendants and the recovery of the other completed but as yet uncashed checks. When the State sought to introduce S-2 through S-6, defense counsel objected on the ground that these checks constituted evidence of "other offenses" for the purpose of showing "system" (R.S. 15:445, 446) and the State had not given the defendants notice of its intention to use such evidence as required by State v. Prieur, 277 So.2d 126 (La. 1973). The thrust of defendants' argument is that the bill of information charged the defendants with the crime of theft of $1292.29 and since the checks sought to be introduced were never cashed, they could not form any part of the crime of theft. Therefore, it is argued, they constituted evidence of other crimes.
As the facts of the case demonstrate, the defendants were involved in a scheme to defraud the bank by depositing in their ICB account worthless checks from another bank and then negotiating their ICB checks to obtain cash. The attempts by the defendant and the two young men to cash checks on July 17, 1975 were part of this continuing scheme to defraud the bank. R.S. 15:447, 448 defining the Louisiana concept of res gestae provide:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words, and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
The attempts to cash checks on July 17, 1975 together with the prior successful cashing of checks pursuant to this scheme form one continuous transaction. R.S. 15-447 specifically provides that "[w]hat forms any part of the res gestae is always admissible in evidence. "In addition, in State v. Priur, supra, in setting out the guidelines to be followed when evidence of other crimes is sought to be used by the State, this court specifically said:
"When the State intends to offer evidence of other criminal offenses under the exceptions outlined in R.S. 15:445 and 446:
"(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony." (Emphasis added). 277 So.2d at 130.
These assignments lack merit.
Assignments of Error Nos. 18, 19 and 20
These assignments involve the introduction into evidence of exhibit S-1, the envelope containing over $600.00 in cash that was seized from defendant Bilbo's automobile. At trial, when the State first sought to introduce the envelope into evidence, the defendants objected to its introduction solely on the ground that it had been unlawfully seized. The trial judge had previously ruled on that issue at the motion to suppress (see discussion of Assignments 1, 4, 9 and 12 above) and thus permitted the admission of S-1. No other objections were offered to its introduction. Subsequently, however, the defendants objected to the admission of S-1 on the ground that a proper chain of evidence had not been established. The trial court sustained the objection and defense counsel asked that the trial judge instruct the jury to the fact that *1030 S-1 was not in evidence. The trial judge refused to admonish the jury at this time because the State had not yet rested. Defendants moved for a mistrial which motion was denied. The State then recalled Detective Dunn (who had brought the envelope to court) in order to establish the chain of custody. Defendants objected on the ground that the witness had not been sequestered from the time he initially testified. The trial judge overruled this objection. After the detective testified, the trial judge permitted S-1 to be introduced into evidence. Defendants assign as error the refusal of the trial judge to admonish the jury (or declare a mistrial); the recall of Detective Dunn; and the eventual admission into evidence of S-1.
The trial judge was correct in his refusal to admonish the jury or declare a mistrial. As the trial judge points out in his per curiam to Assignment No. 18, the State had not yet rested and thus the court permitted the prosecution to recall Detective Dunn. If exhibit S-1 had eventually been ruled inadmissible, the refusal of the trial judge to admonish the jury might have been error. However, since S-1 was subsequently properly admitted (see discussion below), the trial judge was correct in his refusal to instruct the jury or declare a mistrial.
The trial judge indicated that he would permit Detective Dunn to be recalled, over defendants' nonsequestration objection, because he would only be testifying as to the technical matter of chain of custody. C.Cr.P. 764 provides:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
It is within the sound discretion of the trial judge to exclude witnesses from the sequestration order and to permit witnesses who have violated the order to testify. See e. g., State v. Washington, 294 So.2d 794 (La.1974). Here, since the witness was recalled merely to establish the chain of custody of physical evidence and not to testify as to any substantive matter in the case, no abuse of discretion has been demonstrated.
Lastly, we note that Detective Dunn's testimony did establish a sufficient chain of custody for the admission of S-1. The detective testified that he received the envelope from Officer Blalock at approximately 3:00 p. m. on the date of the defendants' arrest. Officer Blalock had arrived at the Prytania ICB branch at approximately 2:50 p. m. on the date of the arrest and he was the officer who removed the envelope from the defendant's car. Detective Dunn testified that this was the identical envelope that had been in the safe in the Detective Bureau since that time and that no other envelope containing cash had been placed in the safe. The detective further testified that he had brought the envelope to court that morning himself. An adequate chain of custody was established for admission of the evidence. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
These assignments lack merit.
In brief the defendants specifically abandoned Assignments of Error Nos. 2, 3, 5, 6, 8, 10, 11, 14, 21, 22, 23, 24 and 25.
Accordingly, since there was no error in the rulings of the trial judge, the convictions and sentences of the defendants are affirmed.