347 So.2d 167 (1977)
STATE of Louisiana
v.
Frank J. LAIN.
No. 58951.
Supreme Court of Louisiana.
May 16, 1977.
Dissenting Opinion July 1, 1977.
*168 Bernard Kramer, Law Office of Bernard Kramer, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., L. Paul Gianfala, Asst. Dist. Atty., for plaintiff-appellee.
*169 DIXON, Justice.
On July 8, 1976 Frank J. Lain was charged by bill of information with possession of marijuana with intent to distribute in violation of R.S. 40:966(A)(1) and (B)(2). Defendant pleaded not guilty and filed a motion to suppress the marijuana seized on the date of his arrest. He argued that the search was conducted without probable cause and was a warrantless search not justified by any recognized exception to the warrant requirement. After a hearing on his motion, the trial judge ruled that the evidence was constitutionally seized. Thereafter, with the consent of the State and the approval of the trial judge, defendant changed his plea to guilty conditioned upon his right to appeal the trial court's adverse ruling on the motion to suppress. Defendant was sentenced to serve three years in the custody of the Department of Corrections which sentence was suspended, and he was placed on three years active probation. Defendant relies upon two assignments of error for reversal of his conviction. (Pursuant to our ruling in State v. Crosby, 338 So.2d 584 (La.1976), the defendant's conditional guilty plea properly preserves the judge's ruling for appellate review).

Assignments of Error Nos. 1 and 2
In Assignment of Error No. 1 defendant argues that the trial judge erroneously ruled that there was probable cause for the search. The second assignment of error presents for review the existence of an exception in this case justifying the warrantless search. At the hearing on the motion to suppress, the following facts were established.
At approximately 11:00 p. m. on April 3, 1976, Detective Jimmy Chevalier of the Alexandria Police Department, received a call from a police informant. The informant related that an individual known as Frank Lain supposedly had a "large quantity" of marijuana in the trunk of his green 1968 or 1969 Pontiac GTO. After extensive examination by both sides, Detective Chevalier candidly admitted that he could not remember whether the informant had claimed to have seen the "large quantity" of marijuana in the trunk of defendant's car. However, he was certain that the informant told him that shortly before the call the informant had seen a "quantity" of marijuana "in the car" and that there was "supposed to be a large quantity of marijuana in the trunk."
At the time he received this information, Detective Chevalier was off duty. However, since the informant told Detective Chevalier where he thought the vehicle might be located, Detective Chevalier called Officer Lamkin, also of the Alexandria Police Department, and conveyed the information to him. Officer Lamkin drove to the part of town where the suspect GTO was allegedly located. At approximately 12:15 a. m. on April 4, 1976 Officer Lamkin noticed the suspect vehicle and began to follow it. The driver, Frank Lain, stopped the car, got out, and walked back to the officer's vehicle. At that point Officer Lamkin exited his car, identified himself as a police officer, and stated: "I [have] probable cause to search [your] car for narcotics." Lamkin then instructed Miss Tracy Lolan, a passenger in the defendant's vehicle, to get out of the car and he searched the passenger compartment.
In the ash tray Lamkin found five "roaches." He then placed defendant under arrest for possession of marijuana and advised him of his Miranda rights. Officer Lamkin then asked defendant for a key to the trunk, saying: "Well, I'm going to have to get into your trunk because, you know, I'm looking for a large quantity of narcotics and they were not in the front and I'm going to get into the trunk of your car." Defendant claimed to not have a key to the trunk. A number of people began to gather around the scene (a residential neighborhood), several backup police units had arrived and their red lights were flashing. Officer Lamkin then determined to have the defendant's car towed to the police station where it could properly be searched.
Defendant was taken by the police to the station, and after being booked, was placed *170 in jail. Once the wrecker delivered the car to the station, Officer Lamkin, still without a key to the trunk, removed the back seat and directed a flashlight into the trunk compartment through holes cut for speakers. He saw a large plastic bag, but was unable to determine what the contents of the bag might be. At this moment defendant's father arrived and Mr. Lain was told that his son was arrested for possession of marijuana and that the police intended to open the trunk by forcing the lock, if necessary. Mr. Lain agreed to go home and get a spare key to the trunk of his son's car. He returned some thirty minutes later with the key. The trunk was opened (at about 2:00 a. m.) and approximately eleven pounds of marijuana were found inside the plastic bag. (It is undisputed that valid consent was not obtained to search the trunk). On the basis of the discovery of this large amount of marijuana, defendant was charged with possession with intent to distribute and ultimately pleaded guilty to this charge.

Probable Cause
Defendant contends that the informant did not relate sufficient facts to Detective Chevalier in order to establish the reliability of his information. (It is conceded that this informant had been proved reliable by giving reliable information in the past). He argues that the allegation that marijuana was "supposed to be in the trunk" is not a sufficient statement of fact upon which probable cause can be determined.
Defendant's argument overlooks the chronology of the search. The informant had related that he had seen a quantity of marijuana in the car. Not more than an hour after this information was related to the police, the passenger compartment was searched based upon this assertion of fact, clearly establishing the reliability of his information. This information was sufficient to give the police probable cause to believe that at least in the passenger compartment defendant had a quantity of marijuana. The discovery of the five "roaches," when coupled with the informer's assertion that a "large quantity" of marijuana was "supposed to be in the trunk," sufficiently corroborated the reliability of the information. Therefore, after the discovery of the "roaches," the officers had probable cause to search the trunk for marijuana.

Warrantless Search
The closer issue presented is whether a search warrant was required either at the time of the initial search of the passenger compartment or at the time of the search at the police station. It is clear that under the Fourth Amendment of the United States Constitution as well as Louisiana Constitution Article I § 5, a warrantless search is "per se unreasonable" unless it falls within a limited number of well delineated exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Hearn, 340 So.2d 1365 (La.1976); State v. Mora, 307 So.2d 317 (La.1975); State v. Hargiss, 288 So.2d 633 (La.1974). The only exception arguably applicable on these facts is the existence of probable cause and "exigent circumstances" make the securing of a search warrant impracticable. E. g. State v. Hearn, supra; State v. Jones, 315 So.2d 270 (La.1975); State v. Massey, 310 So.2d 557 (La.1975). The rationale of the automobile exception is that "the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting . . ." Chambers v. Maroney, 399 U.S. 42, 50-51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970). See also, State v. Hearn, supra.
In this case it is clear that at the time of the search of the passenger compartment, the opportunity to search was fleeting and, thus, there were exigent circumstances justifying the warrantless search. However, it is strongly contended that once the defendant was arrested and the automobile was in police custody at the station, there ceased to exist exigent circumstances, and the police could have obtained a warrant. (That the second search might be unconstitutional is important; *171 without the discovery of the large quantity of marijuana defendant could only have been prosecuted for simple possession, a misdemeanor). If this is so, the large quantity of marijuana should have been suppressed. U.S.Const. Amend. IV; La. Const. Art. I, § 5; C.Cr.P. 703.
"Exigent circumstances" normally exist when a moving vehicle is the subject of a search because of its mobility and the possibility that it could quickly be removed from the jurisdiction and the evidence destroyed. Faced with these possibilities, police armed with probable cause are justified in stopping the vehicle. At this point, in order to preserve the evidence and make an effective search, the police must either immediately search the car or seize it until a warrant can be obtained. Since both the warrantless seizure and the warrantless search constitute significant invasions of privacy, it may be difficult to ascertain which is the "lesser" intrusion. Chambers v. Maroney, supra; State v. McQueen, 278 So.2d 114 (La.1973). Normally, however, if the police decide to hold the car under police custody so that a warrant can then be safely obtained, there is no justification, after custody is effected, for a later warrantless search. See State v. Jones, supra; State v. Massey, supra; State v. Hargiss, supra. Cf. State v. Gordon, 332 So.2d 262, 265 (La.1976) (the warrantless search was authorized "while it [the automobile] was still located on the highway"); State v. Thomas, 310 So.2d 517 (La.1975).
Under exceptional circumstances it has been held that if there is a reasonable basis for moving the vehicle from the place where it was initially stopped, and at the time of the arrest the police had the legal right to search where the police eventually searched, and a relatively short time elapses between the decision to move the vehicle to a safer location and the ultimate search, then the search is constitutional. Chambers v. Maroney, 399 U.S. 42, 52 n. 10, 90 S.Ct. 1975, 1981 n. 10, 26 L.Ed.2d 419, 429 n. 10 (1970); State v. Thomas, supra; State v. McQueen, supra. Cf. also, Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (dissenting opinion). The search under these circumstances is said to be constitutional. State v. McQueen, supra.
All of the important factors are present in this case. The car was stopped late at night (12:15 a. m.), in a residential neighborhood; people were gathering, flashing lights on a number of police cars were creating a disturbance, and defendant claimed not to have a key to the trunk. Thus, the police acted reasonably in taking the car to a calmer, better lighted location with the hope of avoiding breaking the trunk open. The car trunk could have been searched where the car had originally stopped, and at the time of the arrest for possession of marijuana the police could have searched the trunk in connection with that charge. Finally, less than two hours elapsed between the decision to move the car and the ultimate search (a substantial part of which was due to the unexpected delay in towing the car to the station and the defendant's father's delay in securing the trunk key). Under these circumstances, the subsequent search of the trunk, as the initial search of the passenger compartment, was made under "exigent circumstances" and was constitutional.[1]
For the foregoing reasons, the conviction and sentence are affirmed.
SANDERS, C. J., concurs in the decree.
CALOGERO, J., dissented and filed an opinion in which DENNIS, J., concurred.
MARCUS, J., concurs.
DENNIS, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I disagree with the majority's holding that probable cause existed for the search of the trunk of defendant Lain's automobile, *172 and also with the holding that demands of exigency vitiated the need for obtaining a warrant to search the trunk of the car where the car had been taken into police custody. La.Const. art. I, § 5 (1974).
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by CALOGERO, J.
NOTES
[1] The author is of the personal view that exigent circumstances do not exist when the automobile is lawfully (R.S. 40:989) in custody of police at the station. If there is an opportunity to obtain a search warrant, the circumstances are not exigent, and we should require that a warrant be obtained. Nevertheless, that is not the state of the law.