363 So.2d 486 (1978)
STATE of Louisiana
v.
Freddie W. CASE, Jr., Michael Wayne Davis and William J. Kimball.
No. 61894.
Supreme Court of Louisiana.
October 9, 1978.
Philip A. LeTard, Vidalia, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. C. Falkenhemer, *487 Dist. Atty., Glenn B. Gremillion, Asst. Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
On Sunday night, November 11, 1977, Sherry Keith called upon Deputy Lyle Schiele of the Concordia Parish Sheriff's Department to report that she had seen her sister smoking marijuana with a group of people in a trailer belonging to Freddie Case. She and the deputy went to the home of Vidalia City Judge Patrick McDonough, III, where the judge placed Mrs. Keith under oath and listened to her sworn statement in which she gave an eyewitness account of the events in the Case trailer. Judge McDonough then issued a search warrant wherein it is stated that probable cause for the warrant was contained in affidavits supplied by Sherry Keith. In fact, no affidavit was ever obtained. At approximately 10:30 p. m. that night Sheriff's Department officers searched a trailer belonging to Freddie W. Case, Sr. and discovered a small quantity of marijuana and some paraphernalia. As a result of this search, defendants Freddie W. Case, Jr., Michael Wayne Davis and William J. Kimball were arrested and charged with possession of marijuana with intent to distribute.
On January 25, 1978 consolidated motions to suppress and preliminary examinations were heard by the district court. Over defense objections, the prosecution was permitted to establish probable cause for the issuance of the search warrant without the support of an affidavit. Defendants sought and were granted a writ of certiorari to review the trial judge's ruling denying the motion to suppress. Defendants assign four errors as mandating reversal of this ruling.

Assignment of Error No. 1
The defendants contend that it was reversible error to deny the motion to suppress by upholding the search warrant without the requirement of a written sworn statement to establish probable cause for its issuance. We agree.
Article 162 of the Code of Criminal Procedure provides:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure."
In State v. Wells, 253 La. 925, 221 So.2d 50 (1969), this provision was interpreted to require an affidavit in all cases for a search warrant to issue:
"A comparison of this article with its source provisions (LRS 15:42-44) now leaves no doubt but that a search warrant can legally issue in this state only when an affidavit has been submitted to the judge and such affidavit recites facts which satisfy him, the judge, not the affiant, that probable cause exists for its issuance. That the affirming officer was aware of facts which, if alleged in his affidavit, would have shown probable cause is of no moment.
The clear and unmistakable language of Article 162 requires, as aforestated, that such facts be contained in the affidavit; it does not contemplate that the affiant should perform the function of determining what is probable cause. . . ." (Emphasis by the author). 253 La. at 931, 221 So.2d at 52-53.
A similar stance was taken in State v. Massey, 310 So.2d 557 (La.1975), where it was said:
". . . The mere existence of probable cause will not even validate a search pursuant to a warrant unless the facts and circumstances which comprise the probable cause are contained in a written affidavit and presented to the neutral magistrate to whom the warrant application is made. . . ." 310 So.2d at 560.
The prosecution has taken the position that such statements constitute mere dicta and that actual standard is to be found in Article I, § 5 of the Louisiana Constitution *488 which requires only that probable cause be supported by oath or affirmation. Alternatively, the prosecution contends that the requirement of an affidavit expressed in Article 162 can be fulfilled by a sworn statement and that an "affidavit" may therefore be oral as well as written.
Although it is true that the authorities cited above involved different situations from that before us now (in Wells an affidavit was executed but failed to recite sufficient facts to support a finding of probable cause, whereas in Massey a warrantless search was involved), this fact by itself does not render these pronouncements incorrect statements of the law. Moreover, the purpose of the legislature's requirement of affidavits is amply revealed in this case. Since no affidavit was available to establish probable cause, the prosecution summoned Judge McDonough to testify to the information given to him under oath by Sherry Keith. Even though Judge McDonough had issued the warrant only two months previously and had special reasons to remember this particular case (in that he knew Freddie W. Case, Jr., and at first suspected Mrs. Keith of having improper motives in informing on him), his testimony concerning the facts told him by Mrs. Keith suffers from the passage of time and the vagaries of memory. Like most persons asked to recount a past conversation, Judge McDonough could remember the substance of Sherry Keith's statement but not some of the details: "Now seem like she told me there was a pipe there or something, but I may be wrong about that." Yet it is precisely such details which take on crucial importance in an after-the-fact determination of whether probable cause existed for the warrant's issuance. It would prejudice the rights of the defendant too substantially for the prosecution to be able to rely on the memory of the issuing magistrate, who in most instances will certainly remember less of the transaction than in the instant case, to establish the facts upon which probable cause is based for the warrant's issuance.
The State's argument that an oath or affirmation alone will suffice to support probable cause is based on Article I, § 5 of the Louisiana Constitution of 1974:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
This argument does not appreciate the relationship of the State Constitution to a statute. The Constitution establishes the outer limit of governmental action with respect to individuals; beyond a specified point the State may not interfere in the lives of the citizens in the exercise of the police power. For this reason a warrant may not issue on mere suspicion or, even if based on probable cause, if the probable cause is supported only by a statement not made under oath. Yet nothing in the Constitution prevents the legislature from increasing the limitations on governmental action. This the legislature has done by enacting Article 162 requiring that affidavits be submitted to a judge to decide whether probable cause exists to issue the search warrant. To argue that the intent of the law is best found in the State Constitution is to disregard the legislature's authority to enact legislation to increase the rights held by the people under the Constitution.
Finally, the State argues that the requirement of an affidavit can be met by a sworn statement and that in effect Article 162 contemplates the use of an "oral affidavit." A perusal of related provisions in the Code of Criminal Procedure reveals the fallacy of this position. Article 385 states: "An affidavit is a written accusation of crime made under oath and signed by the affiant." (Emphasis added). Webster's *489 Seventh New Collegiate Dictionary (7th Ed. 1965) defines affidavit as "a sworn statement in writing made esp. under oath or on affirmation before an authorized magistrate or officer," and the Random House Dictionary of the English Language (1967) defines the term as "a written declaration under oath made before an authorized official." All other provisions of the Code which employ the term "affidavit" clearly envision from their context the affidavit as a written instrument. For example, Article 353 requires that an affidavit accompany an application for a writ of habeas corpus, whereas Article 27 requires an applicant for a peace bond to file an affidavit. Clearly an oral statement would not be efficacious in either situation. See also C.Cr.P. 14, 202, 327, 355, 382, 386 and 707.
We therefore conclude that the trial judge was in error to allow probable cause to be established in the absence of an affidavit, as required by Article 162 of the Code of Criminal Procedure.

Assignment of Error No. 2
The defendants' second assignment is that the trial court erred in finding the description of the premises in the warrant to be sufficient.
Judge McDonough testified at the hearing on the motion to suppress that Sherry Keith told him that she had seen her sister smoking marijuana with some other people in Freddie Case's trailer. The judge issued the warrant authorizing a search of "a mobile home owned by one Freddie Case located north of Vidalia near the main line levee."
In fact, there were three trailers belonging to the Case family or relatives in the immediate area. Two trailers, one owned by Freddie W. Case, Jr., and the other by his father, Freddie W. Case, Sr., were parked only a few feet apart from one another (Mr. Case, Sr. testified that they were within spitting distance). A third trailer owned by Mrs. Case's brother was somewhat removed from the others, being parked at a distance estimated at one to two city blocks from the Case trailers. No signs indicated the owners of the trailers. It appears from the testimony adduced at the hearing on the motion to suppress that Mr. Case, Sr.'s trailer was searched by the Sheriff's Department rather than his son's trailer. However, Mr. Case, Sr. stated that his son had complete freedom to use his father's trailer, especially to entertain guests.
The State Constitution and the Code of Criminal Procedure require a search warrant to describe with particularity the person or place to be searched. La.Const. Art. I, § 5; C.Cr.P. 162. The reason for this rule of law has frequently been stated:
"The object of the description in a search warrant is to prevent the search of the wrong premises. If the place to be searched is described in sufficient detail to enable the officers to locate it with reasonable certainty and with the reasonable probability that the police will not search the wrong premises, the description is sufficient. United States v. Prout, 526 F.2d 380 (5th Cir. 1976); United States v. Darensbourg, 520 F.2d 985 (5th Cir. 1975); United States v. Melancon, 462 F.2d 82 (5th Cir. 1972). See also Wharton's Criminal Procedure, § 166 at 343-346 (12th Ed. 1974)." State v. Cobbs, 350 So.2d 168, 171 (La.1977).
See also State v. Petta, 354 So.2d 563 (La. 1978); State v. Nejin, 140 La. 793, 74 So. 103 (1917).
When the deputies reached the location of the Case trailers, one trailer was dark and apparently vacant whereas the other trailer was lighted, and a party was evidently in progress within. The police searched the second trailer, which belonged to defendant Case's father, and discovered the marijuana. From the facts adduced at the motion to suppress hearing, it appears that the correct trailer was searched. Mrs. Keith reported the marijuana use to Deputy Schiele in the evening of January 18 and the search was conducted by 10:30 p. m. of the same night. This time frame, when viewed in connection with Mr. Case, Sr.'s statement that his son had free use of his father's trailer indicates that Case, Jr. was *490 using his parent's trailer to entertain his friends and that Mrs. Keith observed the marijuana smoking in the father's trailer.
However, the fact that the correct trailer was searched does not terminate our analysis. Our law does not look to whether the correct premises were searched but rather to the sufficiency of the description of the place to be searched. In State v. Petta, supra, we discussed the requirement of a particular description of an error in street addresses and stated: "Such a discrepancy may indeed be fatal to the validity of a search warrant, in circumstances where the variance authorizes search of other premises than those actually searched." 354 So.2d at 564. Under the description contained in the warrant, either of the Case trailers could have been searched. In fact, it is surprising that the trailer belonging to Mrs. Case's brother was not searched since it stood alone and the deputies might have expected Mrs. Keith to mention that another trailer was parked almost flush with the one in which she observed the marijuana use.
Knowledge of the searching officers obtained from sources other than the warrant has sometimes been considered by this court in ruling on a description's sufficiency. In State v. Chaffin, 324 So.2d 369 (La. 1975), the house to be searched was designated in the warrant as the second house from the corner rather than the fifth house. In finding the description sufficient, we noted that the defendant's house had been under surveillance for some months and was actually known to the searching officers. In addition the contraband seized had been taken from the defendant's car which had been properly described in the warrant. In State v. Lampkin, 253 La. 337, 218 So.2d 289 (1969), we accepted as sufficient a designation of the place to be searched as "premises of Clarence Lampkin and Barbara Fowler" because that place of residence was well known and the premises were the only ones owned by Lampkin and Fowler in the town of Ruston. Nothing in the present record indicates that the Case trailer had been under surveillance or that it was well known to anyone executing the warrant. Therefore, we must hold that the description of the property to be searched was not sufficient and that any evidence obtained under the warrant must be suppressed. State v. Tassin, 343 So.2d 681 (La.1977), State v. Paciera, 290 So.2d 681 (La.1974).

Assignment of Error No. 3
A third assignment of error by the defense concerns the trial court's finding that the search warrant could be executed on Sunday despite the absence in the warrant of any express direction to this effect.
We need not reach this assignment because of our conclusion on the others, and because the error will not recur in this case.

Assignment of Error No. 4
The defendants assign as error the district court's refusal to grant the motion to suppress on the grounds that the warrant was issued by a city court judge but was executed outside the city court's jurisdiction.
Article 161 of the Code of Criminal Procedure permits a judge to issue a warrant authorizing a search and seizure within the territorial jurisdiction of the court. In State v. Carey, 256 La. 990, 240 So.2d 733 (1970), we held that a city court judge was authorized to issue warrants within the jurisdiction of his court. Accordingly, the issue is whether the jurisdiction of the Vidalia city court extends into the wards in which the city of Vidalia is situated.
The State has argued in brief that Judge McDonough believed that his court had ward jurisdiction and had conducted his office with that view in mind. Moreover, the State places stress on the large size of the Seventh Judicial District, which encompasses Catahoula and Concordia Parishes, and the inconvenience of going to Harrisonburg, some forty-two miles from Vidalia, to get search warrants from the district judge. However, these practical considerations cannot alter the terms of Act 516 of 1974 which created the Vidalia City Court. Section 1 of the act provides that the proposition *491 on the ballot in the special election to create the city court should read: "Shall the city court of Vidalia be created having territorial jurisdiction within the territorial boundaries of the city of Vidalia?" Section 7 of the act emphasizes the limited jurisdiction of the Vidalia City Court by providing for an expansion of its territorial jurisdiction if, through judicial determination, the more limited jurisdiction was found invalid:
"If at any time in the future there is a judicial determination that the territorial jurisdiction of the city court of either Ferriday or Vidalia is invalid on the basis that it should have included all the territory in the ward or wards in which the town is located, then the territorial jurisdiction of said city court shall be extended to include all the territory of the ward or wards within which the town is located."
It appears that the city court judge did not have the authority to issue a warrant to search an area which the State admits lies outside the city's territorial boundaries. Therefore we find that this assignment of error also has merit.
Accordingly, the decision of the district court denying the motion to suppress is reversed and the case is remanded to the district court for proceedings consistent with the views expressed in this opinion.
SUMMERS, J., concurs.