459 So.2d 53 (1984)
STATE of Louisiana, Appellee,
v.
Jack Hudson CAMP, Appellant.
No. 16443-KA, 16444-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Rehearing Denied November 29, 1984.
Writ Denied January 7, 1985.
*54 Johnson & Johnson by Neal G. Johnson, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Joseph T. Mickel, Bruce G. Whittaker, Asst. Dist. Attys., Monroe, for appellee.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Jack Hudson Camp was convicted of the offenses of possession of a firearm by a convicted felon and attempted possession of marijuana with intent to distribute. In these consolidated appeals, he advances four arguments which he asserts warrant reversal of his convictions and sentences.
The contraband which forms the basis of these charges was seized in connection with the execution of two search warrants on October 27, 1982. One warrant authorized the search of defendant's residence, and the other, his automobile.
On the date of execution of the warrant, the authorities arrived at the residence described therein at approximately 8:40 p.m. The defendant looked out his window and saw the officers approaching. Two officers entered the house from the rear while another officer forcefully entered the front. Defendant was confronted and read his Miranda rights. After indicating that he understood these rights, defendant was asked to declare the whereabouts of any controlled dangerous substances in the house. Defendant indicated that there were drugs under a green chair in the corner of the living room. A round plastic container containing a plastic bag of marijuana was retrieved from that location. Subsequently, the house was searched and a number of items were seized including smoking paraphernalia, controlled dangerous substances in capsule form, plastic baggies, partially smoked marijuana cigarettes, containers filled with marijuana, *55 hashish and hashish oil, scales, and cash. Additionally, three pistols and ammunition were found in the master bedroom and seized. The officers also seized a key ring from defendant's pocket. One of the keys unlocked a motorcycle trailer, of the variety designed to be hitched to and pulled by a motorcycle, located in the back yard. After unlocking the storage-type trailer, the officers discovered a blue travel bag containing a substantial amount of marijuana. From the right front floorboard of Camp's automobile, the narcotics officer seized one round tin container holding loose marijuana. Camp was subsequently charged in a single bill of information with possession of marijuana with intent to distribute, possession of codeine, and possession of flurazepam. In a separate bill, Camp was charged with unlawful possession of a firearm. After two separate jury trials, defendant was convicted of the offenses of which he now complains.

Sufficiency of the Warrant
Defendant contends that the affidavits in support of the search warrants were insufficient to establish probable cause to search his residence and automobile.
Probable cause may be provided by an informant's tip if the underlying credibility of the informant is established. State v. Burton, 416 So.2d 73 (La.1982); State v. Morace, 446 So.2d 1274 (La.App. 2d Cir.1984). Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) abrogated the rule of Aguilar/Spinelli for determining whether an informant's tip establishes probable cause for issuance of a warrant and substituted a "totality of the circumstances" approach. The court explained that the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court under Gates is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.
Prior to the Gates decision, the Supreme Court adhered to a two-prong test for determining an informant's credibility. The reliability of both the informant and his information had to be shown. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Reliability of the reported information may be supported by, among other factors, direct personal observation by the informant or, if the information came indirectly to the informant, detailed reasons with which to evaluate the reliability of both the source and the information. Factors to support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. State v. Bible, 389 So.2d 42 (La.1980), vacated on other grounds, 453 U.S. 918, 101 S.Ct. 3153, 69 L.Ed.2d 1001, dissented 401 So.2d 966 (La.1981), on remand, 406 So.2d 138 (La.1981); State v. Tassin, 343 So.2d 681 (La.1976); State v. Green, 437 So.2d 302 (La.App. 2d Cir.1983).
In the instant case, the informant who provided the information for both affidavits was known to Detective Bryan Boney, the affiant. Both affidavits state that past information received from the confidential informant has directly resulted in at least four marijuana arrests with convictions obtained. The affidavit in support of the issuance of the search warrant authorizing the search of Camp's residence recites that the confidential informant contacted the affiant and stated that within a forty-eight hour period the confidential informant had been in the above-described residence, and had observed approximately one pound of marijuana in the possession of Jack Camp. The affidavit further states that "Jack Camp represented the substance as being marijuana to the confidential informant and the marijuana was for sale." The affidavit in support of the search warrant authorizing a search of defendant's vehicle indicates that the confidential informant contacted the affiant within a seventy-two hour period and had observed approximately *56 two ounces of marijuana in hashish form in the vehicle described in the affidavit. The affidavit continues that the hashish was in the possession of a white male known to the confidential informant as Jack Camp.
Therefore, under the statements asserted in the affidavits, reliability of the reported information was supported by the direct personal observation of the informant. Additionally, the credibility of the unidentified informant was supported by the references to his prior accurate reports, in the form of four previous tips which led to marijuana convictions. Under the totality of the circumstances, we conclude that the issuing magistrate had a substantial basis for concluding that probable cause to search Jack Hudson Camp's automobile and residence was well established. This assignment lacks merit.

Unlawful Seizure of Firearms
Defendant asserts that the search warrant authorizing the search of his residence for "controlled dangerous substances especially but not limited to marijuana and instruments used in the packaging, distribution, and use of controlled dangerous substance (sic)" did not authorize the seizure of the three firearms.
Louisiana C.Cr.P. Art. 161 provides:
Art. 161. Property subject to seizure
A judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the court which:
(1) Has been the subject of theft;
(2) Is intended for use or has been used as a means of committing an offense; or
(3) May constitute evidence tending to prove the commission of an offense.
A judge may also issue a search warrant in all other cases specifically provided by law. A justice of the peace may issue a search warrant only in those cases specifically provided by law.
Louisiana C.Cr.P. Art. 165 provides:
Art. 165. Authority of peace officer in executing a search warrant
While in the course of executing a search warrant, a peace officer may make photographs, lift fingerprints, seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.
Article 165 thus authorizes the seizure of evidence or contraband located by the searching officers during the course of the search, even if that evidence or contraband is not listed in the warrant. It is axiomatic that such a seizure is described in search and seizure terms as being based on the "plain view" doctrine. The constitutional standards for that doctrine were formerly enunciated in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). For the "plain view" doctrine to apply, Coolidge required a) a lawful initial intrusion, b) that incriminating evidence must be discovered inadvertently, and c) that it be "immediately apparent" that the item observed is evidence or contraband. Where the officers are searching on the authority of a warrant, as in this case, the authority of that warrant and the search for the items listed satisfies the first two requirements of the plain view doctrine. Thus the issue in this case, and in any other where the officers are acting on a warrant and evidence or contraband is seized which is not listed in the warrant, is whether the third or "immediately apparent" requirement is satisfied.
However, the "immediately apparent" requirement was substantially modified recently by the United States Supreme Court in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) when that court stated:
Decisions by this court since Coolidge indicate that the use of the phrase "immediately apparent" was very likely an unhappy choice of words since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for *57 application of the "plain view" doctrine. Brown, supra, 103 S.Ct. at 1542.
It is unclear what phrase or label might be used to replace that of "immediately apparent." However, the Brown court stated that "the rule from Payton, supra [Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)], requiring probable cause for seizure in the ordinary case, is consistent with the fourth amendment and we reaffirm it here." Brown, supra, 103 S.Ct. at p. 1542. We may perhaps then change the label of the third requirement to that of "probable cause" to believe that the item is evidence or contraband.[1]
In a case such as this, where a large amount of dangerous drugs are seized together with other evidence indicating organized distribution, we believe there is probable cause to seize these weapons and thus the current "plain view" standards are met. The weapons are an indication of dominion and control over the drugs, suggesting a willingness to use force to protect the residence and the substances therein. This further suggests a knowledge of the valuable and illegal character of these substances. Moreover, the volitility of a search where large amounts of dangerous drugs are expected is manifest. Even though the defendant may apparently be restrained and there may apparently be no others in or about the premises, common sense indicates that the weapon should be at least temporarily seized for the protection of the officers.
We additionally note defendant's contention regarding this assignment that the state did not prove in the motion to suppress that the officers had knowledge on the defendant's previous felony conviction and thus the seizure is inappropriate because of the state's failure regarding that burden. With respect to this contention, as well as with respect to this entire assignment, it is important to note that since the items at issue were seized pursuant to a warrant, the defendant bears the burden of proving his contentions. LSA-C. Cr.P. Art. 703 D.
This assignment lacks merit.

Rejection of the Guilty Plea
In addition to the instant charges which form the basis of this appeal, defendant was charged with possession of marijuana, a misdemeanor. Before his trial on the charge of possession of marijuana with intent to distribute, he tendered a plea of guilty to the misdemeanor charge. The trial court rejected the plea, as the matter was not properly before it. Defendant argues that he had an absolute right to plead guilty to the misdemeanor charge and that by refusing to accept his tendered plea, the trial court deprived him of a claim of double jeopardy to the instant prosecution.
In this regard, it should be noted that in the instant case, the trial court denied a defense motion to compel the state to designate priority of cases for purposes of trial. Writs were denied by this court but granted by the Louisiana Supreme Court. That court ordered the district attorney to designate the order in which the charges against defendant would be tried. The district attorney complied with this order. As such, defendant was apprised of the fact that he was to be tried initially on the possession of marijuana with intent to distribute charge.
The trial judge obviously would not accept the plea on the misdemeanor charge because the court was aware that the defendant's efforts were a tactical ploy to raise the double jeopardy issue.
It seems logically possible that the defendant could have possessed at least two separate quantities of marijuana, one for distribution and one for personal consumption. Considering the varying quantities found, their packaging and location, such *58 seems probable here. However, the record before us is deficient in many respects in this vein. It is only by virtue of statements in the defendant's brief and the inclusion therein of a copy of the simple possession charge that we are aware of its existence. We are of course aware of the quantity, packaging and location of the marijuana found by virtue of the return on the warrant and the testimony of the witnesses in the various proceedings. As we have already noted, this evidence implies that the marijuana was found in circumstances such as to strongly suggest the appropriateness of the two separate charges.
We express no real disagreement with the general proposition espoused by the defendant that he has a right to plead guilty if he wishes. However, under the circumstances of this cause, where the evidence found could more likely than not support both a charge of simple possession and a charge of possession with intent, the act of the trial judge in refusing to entertain the guilty plea to the possession charge under the circumstances here presented is not error where the intent of the plea is to avoid the imminent trial on the more serious charge.
We find no merit to this assignment.

Scope of the Search
The greatest quantity of marijuana was seized from a blue travel bag located inside the locked motorcycle trailer found in the fenced backyard close to the house. An examination of the exhibits contained in the record affirms that the trailer was located approximately five to ten feet from the house proper. Defendant asserts that the search of this trailer, a storage compartment designed for attachment to a motorcycle, exceeded the scope of the warrant to search his residence.
The warrant in question authorized the search of a "residence located on Louisiana Highway 151, further described as a red brick house with a gray roof. The residence is located approximately two miles from the intersection of Louisiana Highway 151, Louisiana Highway 837, Claiborne Road in Ouachita Parish. The residence is also approximately 1/10 of a mile from the intersection of Sibley Road and Highway 151. There are no other houses in close proximity of this house. This residence is occupied by Jack Camp, W/M, DOB 1-26-55."
In State v. Roach, 322 So.2d 222, (La. 1975), the Supreme Court defined the scope of a residence search authorized by warrant:
In any event, a search warrant authorizing the search of the "premises" at a stated address must reasonably be interpreted to permit a search of the dwelling house proper, the garage, and any other out buildings within close proximity of the house proper that one normally associates with and includes within the word "house" or "premises." United States v. Long, 449 F.2d 288 (8th Cir.1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972); Fine v. United States, 207 F.2d 324 (6th Cir.1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); State v. Brochu, 237 A.2d 418 (Me.1967).
Roach concluded that the search of a motorcycle in a garage located in the rear of the house was authorized by the warrant. In State v. Michel, 422 So.2d 1115 (La.1982), a warrant was issued for the search of the premises, person or vehicle located on a certain piece of property. In the course of executing the search warrant, officers noticed a tree located three feet from the northwest corner of the house trailer that appeared to have been "shot up" by some type of weapon. The officers then removed a bullet slug from the tree that matched the one taken from the body of a murder victim. The court held that the officers did not exceed the scope of the warrant by removing the slug from the tree. In State v. Stroud, 438 So.2d 1172 (La.App. 3rd Cir.1983), the search warrant authorized a search of "... a woodframe dwelling, white color, located 4.15 miles on Hwy. 123 from it's (sic) intersection with Hwy. 8, travelling in north easterly direction *59 toward US 167. House located on the left following these directions. This will include any outbuildings or immovables." The seizure of marijuana found in a storage shed included on the premises was found to be encompassed by the terms of the warrant.
The scope of a residence or premises search authorized by warrant has long been settled in the federal courts. In Brooks v. United States, 416 F.2d 1044, (5th Cir.1969) cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75, the Fifth Circuit found that law enforcement officials were justified on the basis of their warrant which authorized a search of "the premises known as the lot and cabin of Andy Shaw" in searching a car parked on the lot and very close to the cabin. A warrant to search the premises at a certain address was held to be sufficient to embrace the search of a camper bus parked in the driveway in U.S. v. Napoli, 530 F.2d 1198 (5th Cir.1976), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). In so holding, the court rejected the argument that the language contained in the warrant, to-wit: "... a large multiple-story, wooden-frame residential dwelling" limited the ambit of the government's authority to search. More recently, the Fifth Circuit held that a warrant authorizing a search of the premises located at 256 Seadrift Road was sufficiently particular to permit a search of the defendant's Jeep parked on the premises off the street and close to the house. U.S. v. Freeman, 685 F.2d 942 (5th Cir.1982).
Contrary to defendant's assertions, the holding of State v. Massey, 310 So.2d 557 (La.1975) does not mandate a conclusion different from the result we herein reach. In Massey, the officers had a warrant to search the apartment of one Dwyer. In the course of that search, car keys belonging to the defendant Massey were located. It is unclear from the opinion whether Mr. Massey was in Mr. Dwyer's apartment, though the implication is that he was. In Massey, the court, on a four to three basis, held that the warrant to search Mr. Dwyer's apartment did not extend to Mr. Massey's vehicle also located on the grounds of the apartment complex, even though Mr. Massey also maintained an apartment there. In a similar vein, also see State v. Koncir, 367 So.2d 365 (La. 1979), where the warrant "for the search of Jean Koncir's residence" did not authorize the search of the vehicle of her father, Mr. Hutchens, located in the driveway.[2]
Considering the foregoing, we have little difficulty concluding that the warrant authorizing the search of the defendant's particularly described residence encompassed the authority to search the motorcycle trailer located in close proximity to the residence in the backyard. This assignment lacks merit.
For the foregoing reasons, the convictions and sentences of Jack Hudson Camp are affirmed.
AFFIRMED.
NOTES
[1] In State v. Huston, 445 So.2d 67 (La.App. 2d Cir.1984), at footnote 2, this author characterized the new requirement as "a reasonable probability." However, the "probable cause" suggested here, while perhaps being synonomous with "reasonable probability" is more instructive in classical criminal law terms.
[2] Mr. Hutchens is described as an "occupant" and thus the implication from the opinion is that the residence belonged to his daughter, Jean Koncir, and that he was visiting the residence at that time.