CUTRER, Judge.
Defendant was charged by bill of information with two counts of simple burglary, violations of LSA-R.S. 14:62. He pleaded guilty to one count of simple burglary, reserving his right to appeal the trial court’s denial of his motion to suppress, and was sentenced to five years at hard labor with the Louisiana Department of Corrections. The sentence was suspended; defendant was placed on five years supervised probation. Defendant appeals his conviction and presents five assignments of error.
FACTS
On the evening of November 4, 1981, the Grant Parish Sheriff’s Department was notified that the Summerfield Baptist Church and a house belonging to a Mr. Paige had been burglarized. The crime scenes were located approximately one mile from each other on Summerfield Road in Colfax, Louisiana. Investigating deputies were informed by residents of Summerfield Road that two men in a van had been seen “patrolling” the area earlier that day and twice had stopped to ask for directions to the residence of Carroll Yercher. The men were described as a tall, black male and a shorter white male with a dark complexion. The white male appeared to be of Spanish descent and was attired in a blue T-shirt emblazoned with the logo “Dixie Gas.”
Around 8:00 P.M. that evening, the officers pulled over a van on Summerfield Road that matched the description of the one sighted earlier that day. As the driver, Ms. Estelle Granier, stepped out of the vehicle, a man’s wallet fell to the ground. The officers inspected its contents and discovered identification belonging to a Nep Lewis of Gonzales, Louisiana. Lewis fit the description of the black male sighted earlier driving a van. Accordingly, they requested Ms. Granier to accompany them to the Grant Parish courthouse for questioning.
Upon learning that Ms. Granier was from Gonzales, Louisiana, the deputies tele *1267 phoned the Gonzales Police Department for additional information. They learned that Nep Lewis was an employee of Ms. Granier and that the white male suspect fit the description of Elvis Lane who had not reported to work at the Dixie Gas Company that day.
Suspecting that Ms. Granier’s van was indeed the same vehicle observed patrolling the Summerfield Road, the officers requested permission to search it. Ms. Granier acquiesced by signing a written consent to search form. Inside the van the officers discovered furniture taken from the Paige residence.
The next “break” in the case occurred a few hours later at approximately midnight. Mr. Paige called the deputies and told them that he had just seen a tall, black male in the company of a short, white male walking near his home on Summerfield Road. He identified the men as the two strangers in the van who had asked for directions earlier that day. The officers proceeded immediately to Summerfield Road, where they arrested Nep Lewis and defendant without incident. Defendant was wearing a blue T-shirt sporting the logo “Dixie Gas.”
ASSIGNMENT OF ERROR NUMBER 1
By this assignment defendant contends that the trial court erred in finding probable cause for his arrest, as there was no direct evidence linking him with criminal activity.
LSA-C.Cr.P. art. 213 provides, in pertinent part:

“A peace officer may, without a warrant, arrest a person when:

* * * * * *

(S) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.

Reasonable cause has been equated with the probable cause concept and exists when the facts and circumstances, known to the arresting officer and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that a person to be arrested has committed a crime. State v. Arceneaux, 425 So.2d 740 (La.1983). Probable cause for arrest is to be judged by probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act.
In the instant case, the arresting deputies had in their possession information connecting defendant with at least one Summerfield Road burglary. Defendant had been observed by local residents, patrolling the area in a van that resembled the vehicle owned by Ms. Granier, which had earlier been discovered to contain items stolen from the Paige house. Additionally, the black male traveling with defendant was known at the time of defendant’s arrest to be Nep Lewis, an employee of Ms. Granier. Finally, the deputies had learned from interrogating Ms. Granier that she had been in the company that day of a white male fitting defendant’s description. Under these circumstances the arresting deputies clearly had probable cause to believe that defendant was involved in the Summerfield Road burglaries. This assignment lacks merit.
ASSIGNMENTS OF ERROR NUMBERS 2, 3, and 4
(2) The trial court erred in finding that, what purported to be Elvis Lane’s confession, was given freely and voluntarily;
(3) The trial court erred in finding that the State made the showing required by LSA-R.S. 15:451;
(4) The trial court erred in disallowing defendant’s testimony as to what defendant thought would be best for him to do after the conversation with the Gonzales City Police Department.
Immediately after his arrest, defendant was taken to the Sheriff’s Department for booking and interrogation. Before any questioning occurred, however, the deputies placed a telephone call to the Gonzales Police Department. The purpose of this call *1268 was to receive any available information concerning the defendant who worked in Gonzales. They subsequently informed defendant that a Gonzales Police official wished to speak with him. Deputy Hata-way, who had called the Gonzales Police Department, said he did not know the name of the officer who requested to speak to the defendant, nor did he know either the purpose of the request or what was said. At the hearing defendant testified that the officer was Clarence “Bimbo” Brock. Upon the conclusion of his talk with Brock, the defendant was read his Miranda rights. He indicated that he understood those rights and signed a written waiver. Only then did the Grant Parish deputies initiate their interrogation, and the defendant gave a written statement which implicated him in the two burglaries at issue.
At the hearing on the motion to suppress, the defendant attempted to state what he had been told in the telephone conversation with the officer. The trial judge sustained the State’s objection on the grounds of inadmissible hearsay (LSA-R.S. 15:4m).[1] This is of no moment, however, as the defendant subsequently testified as follows:

“Q. And did your conversation with this man on the telephone change your mind what you felt your rights were?

A. Yes, sir. From what he had told me [he] said that it would be better for me to answer the questions they had asked.”[2]
Defendant does not contend that the arresting deputies, in any manner, forced or induced him to provide the statement he did. The record clearly indicates that he was informed of his Miranda rights and chose to waive those rights prior to incriminating himself. His sole basis in seeking to have suppressed his written and signed in-culpatory statement is Brock’s conversation with defendant, wherein the latter was allegedly told[3] that it would be “better” to answer the questions asked of him. Defendant does not allege that any promises, threats or inducements were made by Brock.
The facts of this case are similar to those in State v. Petterway, 403 So.2d 1157 (La.1981), where an officer admitted that he had told defendant “that things would go easier for him if he cooperated.” In addressing that remark, the court stated as follows:

“[Statements of this type, rather than being promises or inducements designed to extract a confession, are more likely musings not much beyond what this defendant might well have concluded for himself. ”

Also, see State v. Dison, 396 So.2d 1254 (La.1981); State v. Hall, 434 So.2d 517 (La.App. 2nd Cir.1983).
Viewing the circumstances surrounding the defendant’s confession, we cannot find that he was subjected to any undue influence, and we agree with the lower court’s ruling that the statement was freely and voluntarily given. For these reasons, these assignments have no merit.
ASSIGNMENT OF ERROR NUMBER 5
Defendant argues that the search warrant issued for the search of the U-Haul truck was defective and, therefore, the evidence seized pursuant thereto should have been suppressed. In his written confession, defendant mentioned that items taken from the Summerfield Baptist Church were stashed in a U-Haul truck, which the depu *1269 ties later learned through interrogation of defendant and Nep Lewis, was parked at a site near Fort Buhlow Lake in Rapides Parish. Acting on this information one of the deputies obtained a search warrant. The record reflects that Deputy Hataway appeared before Judge Robert P. Jackson of the Ninth Judicial District Court and, in a written and signed affidavit, set forth facts which established probable cause to search the U-Haul truck.
Armed with the warrant, the deputies searched the truck and discovered furniture and other items taken from the Summer-field Baptist Church. Defense counsel argues that “[T]he testimony of Deputy Hata-way indicates that although there was an affidavit prepared in connection with the search of the U-Haul truck, Deputy Hata-way, as the affiant, was never placed under oath” and for this reason the search warrant is rendered defective and the fruits of its execution are inadmissible against defendant. We disagree.
Article I, § 5 of the Louisiana Constitution of 1974 and Article 612 of the Code of Criminal Procedure require that search warrants, in addition to particularly describing the place to be searched and the object of the search, must be supported by a showing of probable cause established to the satisfaction of a judge by the affidavit of a credible person. And, in State v. Case, 363 So.2d 486 (La.1978), our Supreme Court held that the affidavit cannot be oral, but must be written.
The record before us indicates that both constitutional and legislative requirements were met when the search warrant challenged was issued. The affidavit in question clearly indicates that Deputy Hataway executed the affidavit before District Judge Robert P. Jackson, setting forth certain facts which established probable cause for the warrant’s issuance.
Both Hataway and Judge Jackson signed the affidavit, the latter attesting that it had been sworn to before him. The affidavit reflects that the requisite formalities were met. Accordingly, this assignment is without merit.
For the above reasons, the conviction and sentence are affirmed.
AFFIRMED.

. This ruling was in error. The policeman’s alleged remarks were not sought to be introduced because of the truth of their content, but they were to indicate the defendant’s state of mind after hearing what was said. See e.g., State v. Turner, 392 So.2d 436 (La.1980).

. After the defendant gave this answer, the district attorney objected. The trial judge sustained the objection and ordered the answer stricken. The answer appears in the record and, since the ruling of the trial court was erroneous, we shall consider the answer to the question.

.The defendant never sought a subpoena to have Brock testify as to what he in fact said to defendant. LSA-C.Cr.P. art. 731. The arresting officers and the State were unaware of Brock’s identity.