544 So.2d 421 (1989)
STATE of Louisiana, Appellee,
v.
William G. THOMPSON, Appellant.
No. CR85-900.
Court of Appeal of Louisiana, Third Circuit.
May 2, 1989.
*426 John Crochet, Public Defender, Lake Charles, for appellant.
Linda Fowler, Asst. Atty. Gen., Baton Rouge, for appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
FORET, Judge.
Defendant, William G. Thompson, was charged by bill of information with six counts of forgery, in violation of La.R.S. 14:72 and was found, by a unanimous jury of six, guilty as charged on all six counts. Thereafter, the trial judge sentenced him under the habitual felony offender statute to serve life imprisonment for the first count and ten years at hard labor consecutively for each of the remaining five counts of forgery. Thompson now appeals his conviction and sentence on all counts on the basis of twenty-eight assignments of error, thirteen of which are argued.

FACTS
In December of 1982, Thompson told Melvin Powell that he needed some girls to work for him answering the phone. Powell introduced Thompson to his niece, Cynthia Melton. Thompson told Cynthia the next day that he needed more girls to answer phone calls and to do bookkeeping, so Cynthia called up her friend, Diana O'Quinn. After Diana met Thompson at the Siesta Motel where he was staying, he asked both of them to cash some checks for him and they agreed.
Thompson gave Diana a check which he pulled out of his briefcase payable to her for $50. Cynthia and Diana drove to Sanford's Big Star grocery store in Sulphur, Louisiana, and cashed the check. Thompson then gave Diana $10 out of this money for cashing the check.
All three of them then drove to George Theriot's grocery store in Sulphur to cash another check. Thompson pulled another check out of his briefcase payable to Diana for $100. After Diana and Cynthia went into the store and cashed the check, Thompson gave Diana another $10 for cashing it.
They then drove to Misse's grocery store and Thompson gave Cynthia a check payable to her for $200. Cynthia cashed the check but this time received no money from Thompson. Next, they drove to Winn Dixie to cash another check payable to Cynthia for $100. Cynthia cashed it and Thompson gave her $10. They repeated this process again at a Wizard Fast Stop, where Cynthia cashed another check payable to her for $100, but received no money from Thompson. Finally, they drove to Johnny's Bar where Thompson cashed a check for $586.32. All six checks were cashed on the same day, drawn on the account of Texas Legal Research Center at the First Pasadena *427 State Bank, and purportedly signed by one Susan Laza.
The next day, Cynthia went and picked up another two girls, Kathy and Kitty Ellender, because Thompson said he needed more girls. Thompson and the four girls drove to Baytown, Texas, in the defendant's three cars. A few days later, in Port Arthur, Texas, Thompson and Cynthia went to the Sabine Bank, where Thompson opened a commercial account under the name of the Texas Legal Research Center and put the counter checks into his briefcase. He also had Cynthia open a personal account.
Later that night after they opened the account at the Sabine Bank, Cynthia saw Thompson typing a check and signing the check protector writer. She also saw him sign the name of Susan Laza on the check.[1] Thompson and Cynthia then drove to Sulphur where Thompson cashed two more checks; one for $586.32 at Johnny's Bar and another at Misse's.
By the end of December, Thompson was in Morgan City, Louisiana. He opened another commercial account under the name of Mid-Gulf Electric Company at the Morgan City Bank. Thompson was arrested in early January, 1983.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3, 4, 5, 6, 7, 8, 10, 12, 19, 21, 25, 27 & 28
None of these assignments have been briefed or argued and are therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Jimmerson, 432 So.2d 1093 (La.App. 3 Cir.1983). See appendix for our disposition of defendant's motion to remand to brief some of these unbriefed assignments of error.

ASSIGNMENT OF ERROR NO. 9
In this assignment, Thompson argues that the trial court erred in denying his motion on November 12, 1984, for the transcript of the motions' hearing[2] on August 3, 1984, as necessary for the proper preparation and conduct of the trial. He claims the transcript of the motion to suppress, in particular, was needed for the purposes of cross-examining and impeaching trial witnesses who were also present at the hearing. Thompson also claims that he was an indigent and that, conversely, a non-indigent defendant would have had the hearing transcribed. Therefore, he contends that the denial constituted unreasonable discrimination on the basis of indigency.
Thompson further argues that, as the transcript of the hearing on the motions would have eventually been made a part of the appellate record, there was no reason not to transcribe it.
The hearing on the motion for the transcript occurred the day before the trial. However, Thompson made no motion for continuance to have the transcript prepared. As the judge could find no authority that required it, he denied the motion.
The jurisprudence since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), has established that the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense, unless other effective means were available which would afford him adequate review. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); State v. Johnson, 261 La. 620, 260 So.2d 645 (1972), cert. denied, 409 U.S. 1085, 93 S.Ct. 691, 34 L.Ed.2d 672 (1972). However, the state's failure to furnish the defendant with a transcript of a prior proceeding for the purpose of impeaching or contradicting the testimony of witnesses at trial will not be reversible error absent a showing of substantial prejudice. State v. Belton, 377 So.2d 1229 (La.1979).
*428 The testimony of the witnesses at the hearing on the motion to suppress evidence on August 3, 1984, and at the trial was substantially the same and without any inconsistencies. Furthermore, the cross-examination of these witnesses during the trial was more thorough and complete than at the hearing. In State v. Allen, 276 So.2d 868 (La.1973) (on rehearing), the court found no prejudice from the denial of a transcript of a prior proceeding where there was no showing that the cross-examination and impeachment of contrary witnesses was impeded and no showing was made that there were actual discrepancies between the testimony at the hearing and at the trial. Likewise, no showing of any such prejudice was made in this case.
Moreover, the State had no advantage over Thompson since the prosecutor did not have a transcript of the August hearing. Finally, Thompson had the same defense counsel at both the August hearing and at trial. Therefore, no reversible error was committed by the trial court's denial of the motion. We find that this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 11
By this assignment, Thompson argues that the trial court erred in denying his motion on November 12, 1984, to recuse the judges of the Fourteenth Judicial District Court. Thus, due to a pending motion to recuse, he argues that the trial judge lacked the jurisdiction to conduct the trial.
Thompson filed a Section 1983 civil rights action against the judges of the Fourteenth Judicial District Court on November 9, 1984, in federal district court. The basis of the federal action was that his constitutional right to a preliminary examination had been unduly delayed and, thus, he was seeking dismissal of the charges against him. Thompson claims that because of this federal action, the judges of the Fourteenth Judicial District Court had too substantial a personal interest in the outcome of the case to preside over it. Thus, he contends the trial judge was required to refer the recusation motion to another judge for hearing. The trial judge denied the motion without referring it to another judge.
Article 671 sets forth the grounds for recusing a judge:
"In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
* * * * * *
(6) Would be unable, for any other reason, to conduct a fair and impartial trial."
"It is well settled that a trial judge is presumed to be impartial." State v. Edwards, 420 So.2d 663, 673 (La.1982). For the accused to be entitled to recusation of a trial judge on the grounds of bias, prejudice and personal interest, such interest must be of a substantial nature based on more than mere conclusory allegations. State v. Edwards, at 673; State v. Walton, 469 So.2d 1204 (La.App. 4 Cir.1985).
If a party files a written motion for recusation and there is a valid ground for recusation set forth in the motion, the judge shall either recuse himself or refer the motion for hearing to another judge or judge ad hoc. La.C.Cr.P. art. 674. If the motion does not set forth allegations of fact which state a statutory cause for recusation, the trial judge may deny the motion without referring it to another judge. State v. Littleton, 395 So.2d 730 (La. 1981); State v. Beavers, 394 So.2d 1218 (La.1981).
In this case the trial judge had not presided over any of the prior hearings. He had no personal knowledge of Thompson's case prior to the hearing on November 12, 1984. A review of the record indicates that the learned trial judge was not only fair and impartial throughout the trial, but extremely tolerant of Thompson. The jury, moreover, was the ultimate decider of Thompson's guilt or innocence. The mere fact that a defendant has joined all of the judges in a judicial action in another court, of itself, does not show a sufficient bias, prejudice, or personal interest in the outcome *429 of the case to present a valid ground for recusing a judge. No other facts were alleged which would have justified requiring the trial judge to refer the recusation motion to another judge. Thus, the trial court was correct in denying the motion for recusation of all of the judges of the Fourteenth Judicial District, without referring it to another judge. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 13[***]
By this assignment Thompson argues that the trial court erred in denying his objection, at the motions' hearing on November 12, 1984, to the district attorney's intent to use "other crimes" evidence. There was no objection raised at trial to this evidence.
The district attorney informed Thompson of his intent to use evidence at trial of two other forgeries. Thompson acknowledges this fact, but claims the State failed to specify the purpose for which this evidence was to be used at trial. As such, Thompson claims the evidence was merely cumulative to show his propensity for bad behavior and thus the prejudicial effect was greater than the probative value of the evidence. However, the jury instructions stated the purpose was to show specific intent.
La.C.Cr.P. art. 720 states that:
"Upon motion of defendant, the court shall order the district attorney to inform the defendant of the state's intent to offer evidence of the commission of any other crime admissible under the authority of R.S. 15:445 or R.S. 15:446."
As a general rule, evidence of other crimes committed by the defendant is inadmissible unless the evidence is substantially relevant for some other purpose than to show a possibility that he committed the crime because he is a man of criminal character. State v. Lee, 381 So.2d 792 (La.1980); State v. Harris, 383 So.2d 1 (La.1980).
Louisiana statutes provide that evidence of similar acts is admissible to show intent, knowledge, or system. La.R.S. 15:445; La. R.S. 15:446; State v. Lee, supra, at 794; State v. Cargille, 507 So.2d 1254 (La.App. 3 Cir.1987), writ denied, 512 So.2d 1175 (La.1987). The intent to defraud is an essential element of the crime of forgery. State v. Machon, 410 So.2d 1065 (La.1982). In order for "other crimes" evidence to be admissible to prove intent, there must be a real and genuine issue of intent at trial and the probative value of such evidence must outweigh its prejudice. State v. Harris, supra, at 8.
Despite Thompson's contention that the district attorney needed to not only give notice of these other crimes but also state the purpose for which it was to be used, there is no authority for this contention. The district attorney gave Thompson notice of his intent to use these forgeries. These other forgeries were very similar to the ones with which Thompson was charged. The purpose of using this "other crimes" evidence was clearly to show intent to defraud, which is an essential element of the crime of forgery. Thus, the trial court was correct in denying the defendant's motion.
Therefore, This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 14 and 15
Thompson argues, in assignment of error # 14, that the trial court erred in not allowing him to recall State's witnesses on cross-examination during presentation of defendant's case-in-chief at trial; e.g., witnesses Diana O'Quinn, Susan Laza, Cynthia Melton, and Detective Roy Miles. Thompson claims that, due to the order in which the State presented its case, he was denied the opportunity to lay a proper foundation on cross-examination in order to impeach their witnesses with the testimony of later State's witnesses. He argues that technical rules of procedure and evidence should have been relaxed to allow him to cross-examine *430 these witnesses when he called them during the presentation of his case.
During Thompson's case-in-chief, he failed to call Ms. Laza or Ms. O'Quinn. Furthermore, he never requested to be allowed to cross-examine Detective Miles during the presentation of his case. New grounds for objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. Hebert, 457 So.2d 877 (La.App. 3 Cir.1984).
The defendant has the right to cross-examine witnesses against him. Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); State v. Soukup, 275 So.2d 179 (La.1973) (on rehearing). Once a witness has been examined and cross-examined as a state's witness, the right of the defendant to recall the witness during the presentation of his case will be subject to the same limitations of examination and impeachment as though she had never been called before. State v. Guillory, 373 So.2d 133 (La.1979); State v. West, 437 So.2d 256 (La.1983).
Cynthia Melton and Diana O'Quinn were called during the State's case. Thompson was given a thorough opportunity to cross-examine them. He also called Ms. Melton as a witness during the presentation of his case. Although the court would not allow Thompson to declare Ms. Melton a hostile witness, Thompson was specifically allowed to ask leading questions in an effort to expedite the trial. Therefore, he was essentially allowed to cross-examine Ms. Melton while she was testifying for the defense.
By assignment of error # 15, Thompson argues that the trial court erred in not allowing him to declare some of his witnesses hostile; e.g., Cynthia Melton, Greg Tete, and Melvin Powell, and in not allowing him to impeach them or attack their character and credibility by other witnesses.
Thompson failed to move for Greg Tete to be declared hostile and thus, this objection cannot be raised now for the first time on appeal. However, Thompson did request that Ms. Melton and Mr. Powell both be declared hostile.
A defendant is not entitled to impeach his own witness unless he has been surprised by the testimony of the witness or the witness has been hostile toward him. La.R.S. 15:487; See State v. Redwine, 337 So.2d 1041 (La.1976). Where the record shows defense counsel was aware of what defense witness' testimony would be and was not surprised by it and the witness was not hostile, refusal to permit defense counsel to impeach the witness will be proper. State v. Mims, 263 La. 193, 267 So.2d 570 (1972).
Thompson was already aware of Ms. Melton's testimony, as she had testified for the State. Her testimony did not change while she was being examined by the defendant. Therefore, Thompson was not surprised by her testimony.
Hostility of a witness, such as will permit a party who calls a witness to impeach him, turns on a showing that the witness' interest is on the side of the opposing party to such an extent that he or she is unlikely to give a true account of the transaction. State v. Welch, 368 So.2d 965 (La.1979); State v. Willis, 241 La. 796, 131 So.2d 792 (1961). Thompson has made no such showing of hostility, nor does the record reveal any hostility toward him.
The true gist of the above assignments of error is that Thompson reserved his right to recall State's witnesses after cross-examination. He failed to recall these witnesses on cross-examination during presentation of the State's case, but instead, called them as defense witnesses. As they were his own witnesses, he could not impeach them without a showing of hostility or surprise.
Thompson went to great efforts to act as his own counsel. He cannot now be heard to complain due to the fact that he lacked the legal procedural skills to properly cross-examine State's witnesses. Further, his court-appointed counsel and co-counsel was available to aid him during the entire trial. The trial court was correct in *431 denying his motion to have these witnesses declared hostile.
We find no merit in these assignments of error.

ASSIGNMENT OF ERROR No. 16
By this assignment, Thompson argues that the trial court erred in not allowing the introduction of the following evidence: prior medical history records of defendant from the Texas Department of Corrections; Moss Regional Charity Hospital records; the medical records from the Calcasieu Parish jail; the booking and offense reports and charges' records in the Calcasieu Parish jail; the booking and offense reports in the Sulphur jail of the defendant, Diana O'Quinn, Cynthia Melton, and Melvin Powell; business and employment records of the defendant; bank correspondence of the defendant; the transcript of the preliminary examination; Melvin Powell's guilty plea of battery against the defendant; and records of a prior trial of Thompson.[3] He argues that this evidence was necessary to lay a proper foundation to impeach witnesses for the State. However, he failed to show how the evidence was relevant to the case and failed to lay a proper foundation for the admissibility of the documents.
"The evidence must be relevant to the material issue." La.R.S. 15:435. Relevant evidence in a criminal case is that tending to show the commission of the offense and intent, or tending to negate the commission of the offense and intent. La. R.S. 15:441; State v. Davenport, 445 So.2d 1190 (La.1984). It is not competent to impeach a witness as to irrelevant matters. La.R.S. 15:494. The trial judge is vested with much discretion in determining the relevancy of evidence and his ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. King, 355 So.2d 1305 (La.1978); State v. Armstrong, 453 So.2d 1256 (La.App. 3 Cir. 1984), writ denied, 457 So.2d 16 (La.1984).
As to the medical records, records of Thompson's prior trial for theft, business records, employment records, bank correspondence, booking and offense reports, and charges records of the defendant; they were completely irrelevant to Thompson's case for the purpose of impeaching any witness during his forgery trial.
In addition to being irrelevant for purposes of impeachment, several of the defendant's business and bank records consisted of correspondence, the authors of which were not present at trial. Therefore, in addition to being irrelevant, these records consisted of inadmissible hearsay.
The booking and offense reports, as well as the charges records, of Cynthia Melton, Diana O'Quinn, and Melvin Powell were also irrelevant and improper for purposes of impeachment. Only evidence of convictions, not arrests, are admissible for the purposes of impeachment. La.R.S. 15:495; State v. Hatch, 305 So.2d 497 (La. 1974); cert. denied, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975).
Thompson called Melvin Powell as his own witness. He did not show that Melvin's testimony surprised him, nor did he show that Melvin was hostile toward him. Even if Melvin's testimony had surprised him or been hostile toward him, Thompson would have been limited to impeaching him with prior contradictory statements, not convictions. La.R.S. 15:487. Therefore, the trial judge was correct in denying Thompson's request to use the evidence of Melvin's guilty plea of battery against him for the purpose of impeaching Melvin.
Thompson also failed to show the need or relevance of entering into evidence the entire transcript of the preliminary examination. Thompson appeared to be improperly attempting to impeach his own witnesses, not under cross-examination, with the transcript of the preliminary hearing. *432 See, La.R.S. 15:484 and R.S. 15:487. A witness may be impeached by proof of prior inconsistent statements. La.R.S. 15:493; State v. Robinson, 337 So.2d 1168 (La.1976). Thompson has not shown that he was denied the right to impeach any witness by the use of prior inconsistent statements. He merely argues that he should have been allowed to introduce the entire transcript of the preliminary examination. As the transcript included hearsay testimony, was not relevant, nor was any showing of need made, the trial court was correct in excluding this evidence.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 17
In this assignment, Thompson argues that the trial court erred in its ruling regarding the voluntariness of the statements given by the defendant on January 5 and 10, 1983, and by allowing their introduction, both at the hearing to suppress on August 3, 1984, and at trial. Furthermore, Thompson argues that the State failed to meet its burden of proving that the statements were freely and voluntarily given, and that he knowingly and voluntarily waived his rights to remain silent and have counsel.
Thompson made two statements to the police. On January 5, 1983, he made a statement to Officers Bob Fry and Lisa Crookshank of the Calcasieu Parish Sheriff's Office. On January 10, 1983, he made another statement to Officers Fry and Myrna Laudumiey of the Calcasieu Parish Sheriff's Office.
At the suppression hearing on August 3, 1984, all three officers testified that Thompson signed a written waiver of rights before making a statement; he appeared to be in good physical condition; he responded coherently to questions; he did not appear to be under the influence of alcohol or narcotics; and there were no threats or inducements promised for giving the statement. They further testified that Thompson did not invoke his right to an attorney or to remain silent while giving the statement, although he was advised of these rights. After Thompson made both statements, he read over them, initialed the mistakes, and signed them. At the trial, Officer Bob Fry again testified to these facts.
Although Thompson does not deny making the statements, he claims that he was on narcotics at the time of the January 5th statement. Furthermore, he claims he was suffering from withdrawal on January 10, 1983. In addition to the testimony of the officers stating that Thompson did not appear to be under the influence of narcotics, Cynthia Melton testified that she never saw Thompson appear to be under the influence of drugs. Also, Marilyn Dansereau, the Calcasieu Parish jail nurse, testified that Thompson did not complain of any drug problems when he was booked into jail in January, 1983.[4]
Before a confession or statement can be introduced into evidence, the state must prove that it was given free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451; State v. Simmons, 443 So.2d 512 (La.1983); State v. Lambert, 503 So.2d 739 (La.App. 3 Cir.1987). If the confession or statement was made while in custodial interrogation, the state must also prove that he was advised of his Miranda rights and that he made a free and voluntary waiver of those rights. State v. Simmons, supra; State v. Lambert, supra. Whether the state is able to prove that the statement has been freely and voluntarily given is determined on a case-by-case basis. State v. Benoit, 440 So.2d 129 (La.1983). The admissibility of a confession is a matter for determination by the trial court. This determination will not be disturbed unless unsupported by the evidence. State v. Burkhalter, 428 So.2d 449 (La.1983).
The record strongly indicates that the statements given by Thompson on January *433 5, 1983 and January 10, 1983, were given freely and voluntarily. Therefore, the trial judge correctly allowed their introduction at both the suppression hearing on August 3, 1984, and at trial.
We find that this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 18
Thompson argues, in this assignment, that the trial court erred in overruling his motion to suppress all physical evidence seized and introduced by the State at the suppression hearing on August 3, 1984, and at trial. Thompson contends that all the physical evidence was illegally seized because the warrant and supporting affidavit are defective on their face.
The supporting affidavit stated that Officer Osburn had been informed by an employee, Larry Collier, of the Morgan City Bank that a possible check forgery operation was occurring in Morgan City. Mr. Collier informed the officer of Thompson's activities wherein he would deposit checks drawn off of several accounts from different banks and then proceed to cash two or more checks in one day at different tellers. Mr. Collier called the Sabine Bank and other banks and was advised that the Texas Legal Research Center checks were stolen. Officer Osburn then contacted the Port Arthur police and found out Thompson had been involved in similar forgery operations in Lake Charles and Pasadena, Texas.
Thompson had given his address to the Morgan City Bank as the Twin City Motel. Upon talking to the manager of the motel, Officers Osburn and Parsiola found that the maid had seen a check protector writer and typewriter in Thompson's room. Also, the Calcasieu Parish Sheriff's Office called and informed the officer that Thompson had been arrested and had given a statement admitting he left these items in his room. Before the officers obtained a search warrant, the manager of the Twin City Motel informed them that he had moved Thompson's items into his office because Thompson failed to pay his bill.
The search warrant issued by Judge Robert Robertson on information given by Officers Osburn and Parsiola authorized the officers to search the office of the manager of the Twin City Motel, located at 1985 Hwy. 90 E, Morgan City, Louisiana.
The officers were to seize the following property: an IBM typewriter; a check protector writer; checks with the name of Texas Legal Research Center issued from the Pasadena State Bank and Sabine Bank; checks from Harrison and Coman, Attorneys at Law, issued from First Pasadena State Bank; and blank checks issued from the Morgan City Bank in the name of Mid-Gulf Electric Company. The purposes for which the warrant was issued were: the items 1) had been the subject of a theft, 2) were intended or used as a means of committing an offense, and 3) constituted evidence tending to prove the commission of an offense.
Article 162 of the Louisiana Code of Criminal Procedure states that:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure."
A judge may issue a search warrant for the seizure of a thing within the jurisdiction of his court which "(1) has been the subject of theft; (2) is intended for use or has been used as a means of committing an offense; or (3) may constitute evidence tending to prove the commission of an offense." La. C.Cr.P. art. 161.
An affidavit supporting a search warrant is presumed to be valid and the defendant will have the burden of proving that the representations in the affidavit by the affiants are false. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978); State v. Brannon, 414 So.2d 335 (La.1982). Probable cause for the issuance of a search warrant exists when facts and circumstances within affiant's knowledge and of which he has reasonably trustworthy information are sufficient to *434 support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Johnson, 408 So.2d 1280 (La.1982); State v. Lewis, 442 So.2d 1159 (La.App. 3 Cir.1983), writ denied, 444 So.2d 1214 (La.1984). There was sufficient information put forth in the affidavit, in this case, to support a reasonable belief that an offense had been committed and that the evidence could be found at the manager's office of the Twin City Motel.
Where the officer executed an affidavit in support of a search warrant before a district judge setting forth facts which established probable cause for the warrant's issuance, both the judge and officer signed the affidavit, and the judge attests that it had been sworn to before him, the affidavit reflected the requisite formalities. State v. Lane, 438 So.2d 1265 (La.App. 3 Cir.1983), writ denied, 443 So.2d 1117 (La. 1984). This was done in this case. Officers Osburn and Parsiola set forth the facts establishing probable cause to Judge Robert Robertson. All three of them signed the affidavit. The judge attested that this information had been sworn to before him. Thus, the supporting affidavit was valid on its face as all the requisite formalities were met.
The search warrant was also valid on its face. It particularly stated the property to be seized, the place to be searched, and the lawful purpose for its issuance. Therefore, the trial judge was correct in allowing all the physical evidence which was seized pursuant to the valid search warrant.
Thus, we find that this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 20 and 23
By assignment of error # 20, Thompson argues that the trial court erred in denying the following pre-trial motions, to-wit: 1) motion to dismiss bill of information; 2) motion to dismiss for failure to prosecute; 3) motion to turn over the criminal file to defendant or allow him to check it out; 4) motion to appoint an investigator; and 5) pro se motion for court to appoint the defendant as his own counsel.

A. MOTION TO DISMISS FOR FAILURE TO PROSECUTE
The defendant's motion to dismiss for failure to prosecute was interpreted by the defense counsel to be a motion for speedy trial. This motion was granted by the trial judge. Therefore there was no error.[5]

B. PRO SE MOTION FOR COURT TO APPOINT DEFENDANT AS HIS OWN COUNSEL
Thompson argues that he was denied his right to represent himself for no legitimate reason. Although the defendant had represented himself under the pro se rule in Texas, he had no formal training under Louisiana law. The trial judge denied his motion because he felt that Thompson was a person who enjoyed trying to beat the system and thus, was looking for a ground on which to appeal if he were convicted. However, the Louisiana Supreme Court reversed the trial judge's ruling and allowed Thompson to enroll as co-counsel, as follows:
"Granted. It is ordered that the trial court permit relator to assist in his defense within reasonable limits to be imposed by the trial court."
We will not review a ruling of the Louisiana Supreme Court, but instead, limit our review to the issue as to whether the trial court permitted Thompson to "assist in his defense within reasonable limits" as ordered by the Louisiana Supreme Court.
The Sixth Amendment impliedly guarantees the accused the right to self-representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Carpenter, 390 So.2d 1296 *435 (La.1980). However, a trial court may appoint a standby counsel to assist a pro se defendant in his defense. McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In determining whether a defendant's right to present his defense pro se has been respected, primary focus must be on whether the defendant had a fair chance to present his case in his own way. Id., 465 U.S. at 177, 104 S.Ct. at 950. The pro se defendant must be allowed to control the organization and content of his own defense, make motions, argue points of law, question witnesses, and address the court and jury at appropriate points in the trial. Id., 465 U.S. at 174, 104 S.Ct. at 949.
Thompson argues that the role his defense counsel played was far more than that of a standby counsel. However, the degree of participation by defense counsel during trial is not the focus in determining whether the defendant controlled the content and organization of his defense. Thompson cross-examined state's witnesses, questioned his own witnesses, made motions, argued points of law, and freely addressed the court when required to do so. Defense counsel followed the line of defense that Thompson had set out in his pro se motions.
The record reveals that defense counsel was clearly an asset to the defendant. Although Thompson was fairly competent to handle his case, he had a great deal of trouble laying proper foundations in order to question witnesses. The defendant does not state how he was prejudiced by having been appointed a defense counsel to assist him. There is no allegation that defense counsel's participation was unsolicited, intrusive, or distracting. The record reveals that defense counsel did not interrupt or give uninvited involvement while the defendant was presenting his case. The appropriateness of appointing a standby counsel, in this case, is supported by the fact that part of Thompson's defense was that he was insane at the time of the offense. Thus, the defendant's right to defend himself pro se was not interfered with in this case.

C. MOTION TO APPOINT AN INVESTIGATOR
Thompson argues that the trial court's denial of the motion to appoint an investigator on the basis that he had appointed counsel was erroneous. Thus, Thompson argues that counsel was forced on him and prejudiced his right to defend himself.
At the hearing on this motion, the trial judge denied the motion because he felt that defense counsel was in a position to do a full and thorough investigation prior to trial. Defense counsel stated that he knew where to acquire the needed information. The trial judge, in effect, appointed defense counsel to be Thompson's investigator. Thompson voiced no objection to this appointment.
The mere appointment of an attorney will not be enough if the appointed counsel is not able to secure the needed information upon which to construct a defense. State v. Madison, 345 So.2d 485 (La.1977); State v. Balfa, 506 So.2d 1369 (La.App. 3 Cir.1987), writ denied, 512 So.2d 436 (La.1987). The defendant has the burden of establishing that he was unable to obtain information which was crucial to his defense. State v. Monroe, 397 So.2d 1258 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983); State v. Singletary, 461 So.2d 481 (La.App. 3 Cir. 1984).[6] In this case, Thompson has not alleged that defense counsel was unable to obtain information crucial to his defense, nor made any showing of prejudice resulting from such denial. Thus, the failure of the trial court to appoint an investigator, other than defense counsel, cannot be presumed to be error, without a showing of prejudice.

*436 D. MOTION TO DISMISS BILL OF INFORMATION
Thompson further contends that his motion to dismiss the bill of information was denied on grounds of his availability of counsel. There is no merit to this contention. Thompson's motion alleged that the bill of information was defective. The trial judge held that the bill of information was sufficient as amended.
Article 464 of the Louisiana Code of Criminal Procedure reads, in part:
"The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated...."
The bill of information stated the defendant was charged with six counts of forgery, in violation of La.R.S. 14:72. Each count stated the number of the check, the date on the check, the account on which it was drawn, and to whom it was payable. Thus, the bill of information stated the essential facts of the offense charged.
If Thompson needed more information as to essential facts, the appropriate action was to request it through a bill of particulars rather than through a motion to dismiss. State v. Griffin, 495 So.2d 1306 (La.1986); State v. Frith, 436 So.2d 623 (La.App. 3 Cir.1983), writ denied, 440 So.2d 731 (La.1983). A bill of particulars was filed and answered in this case. Thus, the trial court did not err in denying the defendant's motion.
MOTION TO TURN OVER CRIMINAL FILE TO DEFENDANT OR CHECK IT OUT/ASSIGNMENT OF ERROR NO. 23
Finally, Thompson argues that the denial of the motion to allow him to check out the criminal file or have it turned over to him was erroneous. By assignment of error # 23, Thompson argues that the trial court did not allow him to have reasonable access to the records because he had appointed counsel. As Thompson claims he did not want counsel, he claims that this denial prejudiced his right to defend himself.
As already stated, it was not error for the trial court to appoint counsel for Thompson. Although he could not check the record out during the August, 1984 hearing, the trial judge said he could have the opportunity to view the record through his counsel. Additionally, pursuant to Thompson's October 5, 1984 request for the record, the trial court ordered:
"Defendant's motion to check out the criminal record herein is denied. The court has made arrangements for counsel to obtain copies of court minutes or pleadings not already in his possession, without cost."
There is no authority for the proposition that the defendant in a criminal proceeding should be allowed to check out or have a record of his proceeding turned over to him. Generally, a person indicted for a crime has the right to inspect the record of the proceedings relating to the offense charged and public records relevant to his case. 76 C.J.S. Records § 37(h) (1952). However, the presumption of access to the records will have to be considered in the balance of competing interests. Newman v. Graddick, 696 F.2d 796 (11th Cir.1983). The ultimate decision as to access is left to the sound discretion of the trial court in light of the relevant facts and circumstances of the particular case. Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).
The trial court has an interest in making sure the original records of a proceeding are not altered, destroyed, or lost. Although Thompson claims that not allowing him access to the records restricted his ability to represent himself, as he had to depend on his counsel, he has neither alleged nor shown how he was prejudiced. His counsel was allowed to view and inspect the record and then inform Thompson as to anything relevant and, after the order of October, 1984, allowed to obtain copies of court minutes or pleadings without cost.
*437 Therefore, we find that the trial court did not err in denying the above pre-trial motions.

ASSIGNMENT OF ERROR NO. 22
By this assignment, Thompson argues that the trial court erred in its denial to sever the six counts of forgery in the bill of information based on the ground that he was prejudiced by the joinder of these six offenses. He argues that the probative value of the evidence of these other offenses did not outweigh their prejudicial effect.
Article 493 of the Louisiana Code of Criminal Procedure states, regarding the joinder of offenses:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
Article 495.1 of the Louisiana Code of Criminal Procedure states, regarding the severance of offenses:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
"In deciding whether the joinder of similar offenses necessitates a severance because of possible prejudice to the defendant, the trial court's decision is subject to the guidelines enunciated in Prieur [State v. Prieur, 277 So.2d 126 (La.1973)]." See, State v. Washington, 386 So.2d 1368 (La.1980). As already stated, evidence of similar acts is admissible to show intent, which is an essential element of the crime of forgery. State v. Machon, 410 So.2d at 1068. The defendant has a heavy burden of proof when he alleges prejudicial joinder. Id. Ultimately, the motion for severance of offenses is addressed to the sound discretion of the trial court and the court's ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984).
In this case, the evidence of similar offenses was relevant to show intent. Thompson used the same scheme to commit all of these similar crimes within a short period of time. The evidence presented was not so complex as to confuse the jury so that they could not apply the law intelligently to each offense. Thus, the probative value of joining these offenses outweighed any prejudicial effect.
We find that this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 24
By this assignment, Thompson argues that the trial court erred in its denial of his motion for post verdict judgment of acquittal. He argues that the evidence was not sufficient to support his conviction.
Article 821(B) of the Louisiana Code of Criminal Procedure states that a "post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." In reviewing the denial of a motion for post verdict judgment of acquittal, an appellate court must determine, under the standard set forth in Jackson v. Virginia, whether any rational trier of fact could have found that the defendant committed the essential elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Smith, 441 So.2d 739 (La.1983).
A review of the record indicates that there was sufficient evidence presented of the essential elements of the crime of forgery to convict Thompson. The testimonies of Diana O'Quinn and Cynthia Melton clearly established his guilt. The State's expert established that all of the checks entered into evidence were signed by the same person and that the signature did not belong to the purported signatory, Susan *438 Laza. Thompson was seen typing and signing several of these checks. The testimony of Susan Laza established that Thompson did not have authority to sign her name on the checks. Thus, the trial court was correct to deny the defendant's motion.
We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 26
Finally, Thompson argues that the trial court erred in that the sentence imposed, i.e., life imprisonment plus 50 years, was excessive considering the fact that none of the prior felonies, nor those of the present conviction, consisted of any violent crime or physical harm against another person, and involved less than $1,300 worth of checks. Thompson argues that the sentence imposed was grossly disproportionate to the nature of the offense.
During the habitual offender hearing, the State introduced evidence that Thompson had been convicted on September 28, 1971, of passing a forged instrument and burglary in Brazoria County, Texas. On January 10, 1975, he was again convicted of aggravated robbery in Orange County, Texas. Also in 1975, Thompson was convicted of defrauding by worthless checks in Galveston, Texas. In 1976, he pled guilty to burglary of an inhabited dwelling and burglary of a building in Harris County, Texas. Finally, in 1977, Thompson was convicted of passing a forged instrument in Hardin County, Texas. The sentence imposed in 1977 ran concurrently with his 1976 sentence. Thompson was released from the Texas Department of Corrections in May of 1982.
Although Thompson contends that several of the above convictions were reversed on appeal, he conceded that, at a minimum, three of the convictions set forth in the habitual offender bill were correct. Therefore, these three convictions are sufficient to serve as a predicate for this multiple offender adjudication based upon a fourth felony.
The trial judge stated that Thompson had been locked up most of his life since 1958. He counted seventeen felony convictions in Thompson's record, and therefore gave him the maximum sentence; a life sentence for the first count of forgery and ten years on each five remaining counts of forgery, to run consecutively with each other and also consecutively with count one.
The trial judge sentenced Thompson under the habitual offender statute, La.R.S. 15:529.1, which reads in part:
"A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * * * * *
(3) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then,
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; ..."
As R.S. 15:529.1(A)(3)(a) is discretionary as to whether a trial judge should sentence an habitual offender to life imprisonment, a trial judge should state the factual basis and considerations taken into account in imposing sentence. Article 894.1 of the Louisiana Code of Criminal Procedure furnishes the guidelines for the trial judge to consider in particularizing the sentence to the defendant. State v. Franks, 373 So.2d 1307 (La.1979), cert. den., 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818 (1981); State v. Carrier, 453 So.2d 1216 (La.App. 3 Cir. 1984).
Although the trial judge did not state all of the considerations articulated in Art. *439 894.1, the record clearly illuminates his sentencing choice of life imprisonment on the first count of forgery. Thompson is a career criminal, as is demonstrated by his numerous felony convictions. His propensity to commit crime indicates that he most probably will commit other crimes if released from incarceration. Additionally, the victims of Thompson's crimes did not induce or facilitate their commission. Due to his history of committing crimes over most of his adult life and the fact that he will probably not be rehabilitated while in prison, the trial judge was correct in sentencing Thompson to serve the rest of his natural life in jail.
For the remaining five counts of forgery, the trial judge sentenced Thompson to the maximum ten years for each count to run consecutively. As a general rule, imposition of consecutive rather than concurrent sentences for crimes requires particular justification. State v. Messer, 408 So.2d 1354 (La.1982). Consecutive sentences are justified when, due to the defendant's past conduct or repeated criminality over an extended period, the offender poses an unusual risk to the safety of the public; similar to those posed by habitual offenders. State v. Murdock, 416 So.2d 103 (La.1982). As the defendant is an habitual offender, the trial judge did not abuse his discretion in sentencing Thompson to consecutive ten-year sentences on the remaining five counts of forgery.
Therefore, this assignment of error is without merit.

DECREE
For the foregoing reasons, Thompson's convictions and sentences are affirmed.
AFFIRMED.

APPENDIX
Defendant, William G. Thompson, filed a motion to remand with this Court, praying that his appellate brief be "remanded" to defense counsel to brief those assignments of error which counsel abandoned without defendant's knowledge or consent.[1] As such, this motion is more properly styled as a motion for an extension of time in which to file a supplemental brief.

PROCEDURAL FACTS
In this case, Thompson's appellate counsel filed his brief on May 18, 1988, after two extensions of time had been granted in order to allow him to review the nine-volume record and research the twenty-eight errors assigned. When counsel submitted his brief, he presented arguments for thirteen of the twenty-eight assignments of error, stating that he anticipated abandoning the remaining fifteen assignments. Defense counsel left open the possibility that he might ask for leave to file a supplemental brief if further research or investigation revealed the possibility that this Court could grant relief in the context of an appeal. Thompson's defense counsel never filed a supplemental brief. The State of Louisiana, appellee, filed its brief with this Court on June 17, 1988. This motion to "remand" was filed January 20, 1989; eight months after the filing of Thompson's original appellate brief and after notice had been sent out that this appeal was going to be submitted to this Court in early February, 1989.

LAW
C.A.R. 2-12.8 states, in pertinent part:
"An extension of time within which to file the brief may be granted by the court for good cause shown on written motion filed with the clerk of the court on or before the date the brief was due.... An extension of time may not be granted if such extension will retard the hearing or determination of the case."
Defendant's motion was filed on January 20, 1989. As this case was submitted to this Court for decision in early February of 1989, an extension would undoubtedly retard *440 the hearing and determination of this case. Therefore, we deny Thompson's motion for an extension of time within which to file a supplemental brief as untimely.
Thompson argues that the denial of his motion to have his counsel brief the complained of assignments of error will prevent him from receiving a complete review of his criminal conviction and give rise to the question of ineffective assistance of counsel. It is now settled that a counsel does not have to brief every issue urged by the defendant regardless of its merit at the risk of being found ineffective. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed. 2d 821 (1985); State ex rel. Cockerham v. Butler, 515 So.2d 1134 (La.App. 5 Cir. 1987). However, the counsel must be available to prepare and submit a brief to the appellate court as an active advocate for the defendant. Evitts, 469 U.S. at 394, 105 S.Ct. at 835; State ex rel. Cockerham v. Butler, 515 So.2d at 1138. As the Louisiana Fifth Circuit Court of Appeal observed in State v. Foley, 448 So.2d 731, 733 (La. App. 5 Cir.1984):
"The function of the court-appointed counsel is not to create rights for an accused; but, rather, to advocate the facts favorable to a defendant's opposition and to assert and/or protect those rights granted to the accused by our constitutions and statutory laws. As designated by its name `brief', the document filed by counsel is intended to be a precise and to the point recitation of his client's position under the applicable facts and circumstances of the case. Its purpose is not to raise irrelevant issues and law."
See also State ex rel. Sprinkle v. Cain, 463 So.2d 7 (La.App. 5 Cir.1984).
The United States Supreme Court recently stated in Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), that:
"No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."
See also State v. Gunter, 525 So.2d 594 (La.App. 3 Cir.1988). Although a defendant can easily second-guess the tactical decisions of his counsel, appellate courts should not attempt to second-guess the tactical decisions of a counsel as to which claims to advance. U.S. v. Daniels, 558 F.2d 122 (2d Cir.1977).
"[It] is neither appropriate nor wise to place upon the appellate court the burden of acting as substitute counsel for the defendant, engaged in a desperate search for error of any kind; and we decline to accept such an obligation."

State v. Green, 469 So.2d 1161, 1165 (La.App. 5 Cir.1985).
This Court is, likewise, not inclined to second-guess the tactical decisions of the counsel or act as substitute counsel for the defendant.
Any issue as to the ineffectiveness of appellate counsel will be more properly raised in a post-conviction writ of habeas corpus in the trial court where the district judge can order a full evidentiary hearing on the matter. C.Cr.P. art. 924, et seq.; C.A.R. 5; State v. Seiss, 428 So.2d 444 (La.1983); State v. Wilson, 450 So.2d 697, 700 (La.App. 4 Cir.1984), footnote 1. Thus, this motion is denied.
MOTION DENIED.
NOTES
[1] Susan Laza testified that her name was signed on all of the checks without her permission or authorization.
[2] The motions taken up at the August 3, 1984 hearing consisted of a motion to suppress, a motion to re-urge prior motions, a motion to allow the defendant to represent himself, a motion to give a file to defendant, a motion for discovery, a motion for bill of particulars, a motion for preliminary examination, a motion to quash and objections to the State's answer to the defendant's motion for discovery.
[***] Our treatment of assignments of error 13, 14, 15 and 16 is based in part on Code of Criminal Procedure articles, sections of Title 15, and jurisprudence, which have been repealed and/or superseded by the new Code of Evidence which became effective on January 1, 1989, subsequent to the trial of the case before us.
[3] The Calcasieu Parish booking cards for Thompson dated 11-2-1982 and 1-4-1983 were entered into evidence as D-2 and D-3. Additionally, Thompson's medical records from the Calcasieu Parish jail and the emergency records from Moss Regional Hospital dated November 21, 1982, were entered into evidence as D-4 and D-4A. Therefore, any assignments of error as to these documents are moot.
[4] The court notes that Thompson was treated for drug withdrawal when he was booked into the Calcasieu Parish jail in November of 1982 on a prior arrest. The record reflects no similar drug withdrawal problem in January of 1983.
[5] Additionally, the court notes that assignment of error # 19 was abandoned on appeal. Assignment of error # 19 states: "The trial court erred in its denial of defendant's motion for a speedy trial, or to dismiss for failure to prosecute on November 7, 1983, and motion to quash for failure to timely prosecute on August 3, 1983."
[6] The substance of Thompson's motion to appoint an investigator was that the testimony of both Cynthia Melton and Diana O'Quinn was necessary at the trial in order for Thompson to present a proper defense. The Court notes that both Melton and O'Quinn testified at Thompson's trial and were available for cross-examination.
[1] These assignments of error include numbers 1-8, 10, 12, 19, 21, and 25. The defendant does not complain of his appellate counsel's failure to argue and brief assignments of error numbers 27 and 28.